Lawrence A. KRUCKENBERG,
Plaintiff-Appellant-Petitioner,

v.

Paul S. HARVEY, Defendant-Respondent.

Supreme Court

*No. 2003AP1813. Oral argument February 1, 2005.—Decided
April 14, 2005.*

2005 WI 43

(Also reported in 694 N.W.2d 879.)

For the plaintiff-appellant-petitioner there were briefs by *William H. Gergen* and *Gergen, Gergen & Pretto, S.C.*, Beaver Dam, and oral argument by *William H. Gergen*.

For the defendant-respondent there was a brief by *Jim D. Scott* and *Wood Law Offices, LLC*, Oxford, and oral argument by *Daniel G. Wood*.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals[1] affirming a judgment and order of the Circuit Court for Green Lake County, William M. McMonigal, Judge. The circuit court granted summary judgment in favor of the defendant, Paul S. Harvey, dismissing plaintiff Lawrence A. Kruckenberg's action alleging trespass and conversion and seeking a declaratory judgment regarding the location of the boundary line between their respective properties. The circuit court's order denied reconsideration of the judgment. The court of appeals affirmed the judgment and order of the circuit court.

¶ 2. The issue presented is whether the doctrine of claim preclusion bars the plaintiff's action. The prior action brought by the plaintiff's predecessor in title against the defendant was for failing to provide lateral support; the defendant had dug a ditch. The prior action ended in a judgment of dismissal on the merits. The plaintiff's present action against the defendant is for trespass and conversion (the cutting and taking of

---

[1] *Kruckenberg v. Harvey*, 2004 WI App 133, 274 Wis. 2d 424, 685 N.W.2d 844.

trees) and for a declaratory judgment regarding the location of the boundary line between the plaintiff's and defendant's land.

¶ 3. We conclude that the case at bar presents a special circumstance to which the doctrine of claim preclusion will not apply, namely, when a prior action between parties or their privies does not explicitly determine the location of a boundary line between their properties, claim preclusion will not bar a later declaratory judgment action to determine the location of the boundary line.[2] Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for proceedings not inconsistent with this decision.

I

¶ 4. For purposes of deciding how to apply the doctrine of claim preclusion to the present case, we set forth the following facts derived from the record on the motion for summary judgment.

¶ 5. The question of claim preclusion in the present case arises from a lawsuit brought by Donald A. Czyzewski, the plaintiff's predecessor in title, against the defendant in 1982. According to the 1982 complaint, the defendant dug a ditch along the northern boundary of his property, altering the topography and natural watershed, causing Czyzewski's soils and trees to collapse, causing the line fence to collapse,[3] and causing the water level of Czyzewski's pond to subside.

---

[2] The trespass and conversion claim, based on the defendant's conduct after the 1982 action and on a determination of the location of the boundary line between the plaintiff's and defendant's properties, may also go forward.

[3] "Line fence" generally refers to a fence separating two parcels of land.

¶ 6. Czyzewski's 1982 complaint alleged that the defendant breached a duty of lateral support and a duty to maintain a line fence and that his conduct was contrary to Wisconsin Statutes[4] §§ 844.01–.21, relating to physical injury to or interference with real property; § 101.111 relating to protection of adjoining property and buildings during excavation; and chapter 90 relating to fences. For the alleged violations, Czyzewski requested: (1) restoration of the line fence, (2) restoration of the eroded portion of his property, (3) restoration of the water level, and (4) $10,000.

¶ 7. The defendant's answer to the 1982 complaint admitted that the defendant and Czyzewski owned adjoining parcels and that the defendant had dug the ditch along the northern boundary of his property. The defendant denied all other allegations of the complaint.

¶ 8. On April 6, 1983, on stipulation of the parties, the circuit court entered an order dismissing the Czyzewski suit on its merits. The defendant agreed to pay Czyzewski $1,500 and plant rye grass along the drainage ditch to prevent erosion.

¶ 9. Czyzewski's sale of his parcel to the plaintiff was completed after the 1982 lawsuit was dismissed, and the plaintiff claims he did not know about the lawsuit.

¶ 10. The plaintiff had his land surveyed in 2000 and learned that the "line fence" was not on the boundary line; the fence was 16 feet north of his property's southern boundary. In other words, the survey showed that the plaintiff's property included a strip of about 16 feet wide that was previously thought to belong to the defendant and on which the defendant had dug a ditch.

¶ 11. Peace between the parties was disturbed in "late winter and early spring of 2001" when the defen-

---

[4] 1981–82 version.

dant decided to harvest some trees on the south side of the fence; according to the 2000 survey, the trees were on the plaintiff's property. The plaintiff asked the defendant not to cut the trees.

¶ 12. After the defendant removed the trees, the plaintiff, armed with his new survey, sued the defendant for trespass and conversion (cutting and taking the trees), failure to provide lateral support (failing to plant rye grass continually to prevent erosion), and a declaratory judgment regarding the location of the boundary line between their properties. The defendant denied many of the allegations of the complaint, asserted the doctrines of res judicata and estoppel, and counterclaimed on the ground that the defendant and his predecessors in title had acquired title by adversely possessing the disputed 16 feet for the requisite period of time.

¶ 13. The circuit court granted summary judgment in the defendant's favor and dismissed the action. The circuit court ruled that the plaintiff could not challenge the location of the line fence as not being the boundary line because of the doctrine of claim preclusion. The circuit court found that the line fence was an issue in the 1982 lawsuit and in effect placed the boundary line at the line fence. The circuit court also ruled that the issue of lateral support was litigated in 1982 and that the doctrine of issue preclusion therefore barred this count.[5]

¶ 14. A divided court of appeals affirmed the circuit court's judgment of dismissal, also on the ground that the lawsuit was barred by the doctrine of claim

___

[5] The lateral support cause of action is not at issue in this review.

preclusion.[6] The dissent reasoned, in part, that the application of claim preclusion to Kruckenberg, given the facts of this case, was unfair.[7]

## II

¶ 15. This court reviews a grant of summary judgment using the same methodology as the circuit court.[8] A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (2001–02).[9]

¶ 16. In the present case no genuine issue of material fact exists.

¶ 17. The only question presented is one of law, namely whether the defendant is entitled to judgment on the ground of claim preclusion. This court determines this question of law independently of the circuit court and court of appeals, benefiting from their analyses.[10]

---

[6] *Kruckenberg,* 274 Wis. 2d 424, ¶ 20.

[7] *Kruckenberg,* 274 Wis. 2d 424, ¶ 24 (Nettesheim, J., concurring in part and dissenting in part) ("I would hold that the application of the doctrine against Kruckenberg does not pass the fairness test of the inquiry.").

[8] *Sopha v. Owens-Corning Fiberglas Corp.,* 230 Wis. 2d 212, 222, 601 N.W.2d 627 (1999).

[9] *See Sopha,* 230 Wis. 2d at 222. All subsequent references to the Wisconsin Statutes will be to the 2001–02 version unless otherwise noted.

[10] *Lindas v. Cady,* 183 Wis. 2d 547, 552, 515 N.W.2d 458 (1994) (citing *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d

## III

¶ 18. To decide this case we must determine the application of the doctrine of claim preclusion.[11]

¶ 19. The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences.[12] When the doctrine of claim preclusion is applied, a final judgment on the merits will ordinarily bar all matters " 'which were litigated or which might have been litigated in the former proceedings.' "[13]

---

306, 310, 334 N.W.2d 883 (1983) ("On review of a determination as to whether the doctrine of *res judicata* applies, we are presented with a question of law." (citation omitted)).

[11] In Wisconsin, the "term *claim preclusion* replace[d] *res judicata;* the term *issue preclusion* replace[d] *collateral estoppel.*" *Sopha,* 230 Wis. 2d at 232 n.25 (citing *N. States Power Co. v. Bugher,* 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995)).

Although the trend has been to replace the phrases "res judicata" and "collateral estoppel" with the clearer terms "claim preclusion" and "issue preclusion" respectively, some commentators and cases still retain the older language. This mix of terminology has no doubt complicated the discussion of the preclusion doctrines. *See* David L. Shapiro, *Civil Procedure: Preclusion in Civil Actions* 9 (2001) (" 'Res judicata,' said one wry observer of the field, 'is hard enough.' And it is made even harder by the failure of courts and commentators to agree on the appropriate terminology—even on the proper use of the term 'res judicata' itself." (citation omitted)).

[12] *Sopha,* 230 Wis. 2d at 233 (citing *N. States Power Co.,* 189 Wis. 2d at 550; *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d 306, 311–12, 334 N.W.2d 883 (1983)).

[13] In contrast, an element of the doctrine of issue preclusion is that the issue was actually litigated in a prior action. *Sopha,*

¶ 20. Claim preclusion thus provides an effective and useful means to establish and fix the rights of individuals, to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, to prevent inconsistent decisions, and to encourage reliance on adjudication.[14] The doctrine of claim preclusion recognizes that "endless litigation leads to chaos; that certainty in legal relations must be maintained; that after a party has had his day in court, justice, expedi-

---

230 Wis. 2d at 233 (quoting *DePratt,* 113 Wis. 2d at 310, and citing *Lindas,* 183 Wis. 2d at 558). The parties and the court agree that the plaintiff is not barred by the doctrine of issue preclusion in the present case; the issue of the boundary line between the properties was not litigated in 1982.

[14] *Sopha,* 230 Wis. 2d at 235 (quoting *N. States Power Co.,* 189 Wis. 2d at 559); Warren Freedman, *Res Judicata and Collateral Estoppel* 12 (1988) (citing Allan D. Vestal, *Res Judicata/Preclusion* V5–V6 (1969)); Robert C. Casad & Kevin M. Clermont, *Res Judicata: A Handbook on its Theory, Doctrine, and Practice* 31 (2001).

One of the reporters of the Restatement (Second) of Judgments, Professor David L. Shapiro, has posited:

> If a final, valid judgment served only as the tribunal's advice on how a controversy should be resolved, leaving it to other tribunals (or even other officials) to consider the controversy anew if they and the parties wished, it would be hard even to think of the initial tribunal as a "court" in the accepted sense. And indeed, the need to recognize the finality of judgments ... is fundamental to the status of the federal courts under Article III of the Constitution and of the courts of many states.

Shapiro, *supra* note 11, at 14.

*See also* Casad & Clermont, *supra* note 14, at 4 ("At a more profound level, res judicata does much more. It is essential to *judicial operation,* to the orderly working of the judicial branch. If disputants could just reopen their adjudicated disputes, there would be no end to litigation, nor any beginning of authority.").

ency, and the preservation of the public tranquillity requires that the matter be at an end."[15]

¶ 21. In Wisconsin, the doctrine of claim preclusion has three elements:

"(1) identity between the parties or their privies in the prior and present suits;

(2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and

(3) identity of the causes of action in the two suits."[16]

¶ 22. In effect, the doctrine of claim preclusion determines whether matters undecided in a prior lawsuit fall within the bounds of that prior judgment.[17]

¶ 23. The parties do not dispute, and we agree, that the first two elements of claim preclusion have been satisfied in the case at bar. The identities of the

---

[15] Allan D. Vestal, *Preclusion/Res Judicata Variables: Nature of the Controversy,* 1965 Wash. U. L. Q. 158, 158 (quoting *Schroeder v. 171.74 Acres of Land,* 318 F.2d 311, 314 (8th Cir. 1963)).

[16] *Sopha,* 230 Wis. 2d at 233–34 (citing *N. States Power Co.,* 189 Wis. 2d at 551). Wisconsin's articulation of the elements of claim preclusion is consistent with other jurisdictions and commentators. *See, e.g.,* Allan D. Vestal, *Res Judicata/Claim Preclusion: Judgment for the Claimant,* 62 NW. U. L. Rev. 357, 357–58 (1967–68) (quoting *Comm'r v. Sunnen,* 333 U.S. 591, 597–98 (1948)); Freedman, *supra* note 14, at 12–17 (listing identity of parties, identity of claim or cause of action, and finality of judgment of award as essential elements of res judicata, that is, claim preclusion).

[17] Kevin M. Clermont, *Common-Law Compulsory Counterclaim Rule: Creating Effective and Elegant Res Judicata Doctrine,* 79 Notre Dame L. Rev. 1745, 1745 (2004).

parties or their privies are the same in the present and the prior suits. The plaintiff was the successor in interest to the property owned by Czyzewski, and the two are in privity for the purposes of claim preclusion.[18] The 1982 litigation resulted in a final judgment on the merits by a court with jurisdiction, satisfying the second element of claim preclusion.[19]

¶ 24. The parties' disagreement focuses on the third element of the doctrine of claim preclusion, namely, the requirement that there be an identity of the causes of action or claims in the two suits.

¶ 25. Wisconsin has adopted the "transactional approach" set forth in the Restatement (Second) of Judgments to determine whether there is an identity of

---

[18] *See S.S. Kresge Co. v. Garrick Realty Co.,* 209 Wis. 305, 310, 245 N.W. 118 (1932) ("[A]djudication is *res adjudicata* and binding on the plaintiff as the privy of its assignor."); Restatement (Second) of Judgments § 43 (1982) ("A judgment in an action that determines interest in real or personal property . . . [w]ith respect to the property involved in the action . . . [h]as preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself."); Casad & Clermont, *supra* note 14, at 153 ("A transferee of an interest in property, who received the interest after the commencement of an action concerning the property between the transferor and a third party, is in privity with the transferor and so is bound or benefited by the adjudication relating to that property interest.").

[19] *See Werner v. Riemer,* 255 Wis. 386, 403, 39 N.W.2d 457 (1949):

> The fact that part of the adjudication was based upon a stipulation of the parties does not affect its finality. . . . The final adjudication is conclusive, in a subsequent action between the same parties, as to all matters which were litigated or which might have been litigated in the former proceedings.

the claims between two suits.[20] Under the doctrine of claim preclusion, a valid and final judgment in an action extinguishes all rights to remedies against a defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.[21] The transactional approach is not capable of a "mathematically precise definition,"[22] and determining what factual grouping constitutes a "transaction" is not always easy. The Restatement (Second) of Judgments § 24 (2) (1982) explains that the transactional approach makes the determination pragmatically, considering such factors as whether the facts are related in time, space, origin, or motivation. Section 24 (2) provides as follows:

> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

■■■■■

¶ 26. The goal in the transactional approach is to see a claim in factual terms and to make a claim coterminous with the transaction, regardless of the claimant's substantive theories or forms of relief, regardless of the primary rights invaded, and regardless of the evidence needed to support the theories or rights.[23] Under the transactional approach, the legal

---

[20] *DePratt,* 113 Wis. 2d at 311–12.

[21] Restatement (Second) of Judgments § 24(1) (1982).

[22] *Id.* § 24(2), cmt. b.

[23] *Id.* § 24(2), cmt. a.

theories, remedies sought, and evidence used may be different between the first and second actions.[24] The concept of a transaction connotes a common nucleus of operative facts.[25]

¶ 27. The transactional approach to claim preclusion reflects "the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so."[26] One text states that the pragmatic approach that seems most consistent with modern procedural philosophy "looks to see if the claim asserted in the second action should have been presented for decision in the earlier action, taking into account practical considerations relating mainly to trial convenience and fairness."[27]

¶ 28. At first blush the events giving rise to the two actions (1982 and 2001) do not appear part of the same transaction, as they are separated by time, space, origin, and motivation. The 1982 suit was prompted when the defendant dug a ditch and allegedly caused Czyzewski to claim erosion to his property and damage to the line fence. The 2001 suit was prompted when the defendant cut trees; this time the plaintiff claimed trespass on his property and sought a declaratory judgment concerning the location of the boundary line between the properties.

¶ 29. Because the trees were not cut until 2001, obviously neither Czyzewski nor the plaintiff could

---

[24] *Conn. Nat'l Bank v. Jendall,* 617 A.2d 544, 547 (Me. 1992) (applying a transactional test).

[25] Restatement (Second) of Judgments § 24(2), cmt. b (1982).

[26] *Id.* § 24(2), cmt. a.

[27] Casad & Clermont, *supra* note 14, at 66.

have brought a claim for tree cutting and taking (trespass and conversion) in 1982. The plaintiff reasons that the 2001 claim is therefore not part of the same transaction as the 1982 claim, and he should not be barred by the doctrine of claim preclusion.

¶ 30. The plaintiff makes a good point, but he overlooks that the aggregate operative facts in both the 1982 and 2001 claims are the same, namely the defendant's conduct in relation to the location of the boundary line. The facts necessary to establish the location of the boundary line between the plaintiff's and defendant's properties were in existence in 1982.

¶ 31. Czyzewski's 1982 claims and judgment depended on who owned the property south of the line fence upon which the ditch had been dug. Czyzewski's 1982 claim was that the defendant dug a ditch on the defendant's property, injuring Czyzewski's property by removing lateral support.[28] In 1982, both parties were mistaken about the location of the boundary line and the ownership of the property upon which the defendant had acted when he dug the ditch.

¶ 32. Similarly, the plaintiff's 2001 claims depend on who owned the property south of the line fence upon which the defendant cut trees. The plaintiff's 2001 claim is that the defendant cut trees on the plaintiff's property, an action that constitutes trespass and conversion.

---

[28] "The only proof necessary [to establish a failure to provide lateral support] is of the making of the excavation and of the injury to the adjoining land in consequence. . . . The doctrine of lateral support is applicable only as between different landowners." 2 George W. Thompson, *Commentaries on the Modern Law of Real Property* § 415 at 610–11 (Grimes 1980 replacement).

¶ 33. Even though the 1982 litigation did not determine the boundary line, the two lawsuits have such a measure of identity of claims that a judgment in the second in favor of the plaintiff would appear to impair the rights or interests established in the first judgment.

¶ 34. The plaintiff's 2001 action might well be precluded under the well-settled claim preclusion analysis. We need not decide that difficult question, however, because even if claim preclusion were to apply here, we conclude that the plaintiff's 2001 lawsuit should proceed under a narrow exception to the doctrine of claim preclusion.

¶ 35. The parties' current dispute over the common boundary line illustrates that claim preclusion in the present case presents the "classic struggle between the need for clear, simple, and rigid law and the desire for its sensitive application."[29] Claim preclusion is a harsh doctrine; it necessarily results in preclusion of some claims that should go forward and it may fail to preclude some claims that should not continue.[30]

¶ 36. Judicial formulation of the doctrine of claim preclusion should seek to minimize the over-inclusion of the doctrine through exceptions that are narrow in scope.[31] This court has previously stated that "[e]xceptions to the doctrine of claim preclusion, confined within proper limits, are 'central to the fair administration of the doctrine.' "[32]

---

[29] Casad & Clermont, *supra* note 14, at 40.

[30] *Id.* at 41. "Flexible or even ad hoc exceptions should work to remedy any remaining over inclusion of [claim preclusion] in particular circumstances, but the exceptions should be small in scope even if necessarily considerable in number." *Id.*

[31] *Id.*

[32] *Sopha,* 230 Wis. 2d at 236 (quoting Restatement (Second) of Judgments § 26, cmt. i).

¶ 37. Exceptions to the doctrine of claim preclusion are rare, but in certain types of cases "the policy reasons for allowing an exception override the policy reasons for applying the general rule."[33]

■■

¶ 38. Recognizing these truths, the Restatement (Second) of Judgments describes exceptions to the doctrine of claim preclusion. The present case falls within the "special circumstances" exception set forth in § 26(1)(f),[34] which reads as follows:

> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> . . . .
>
> (f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

¶ 39. We apply Restatement (Second) of Judgments § 26(1)(f) in the present case. We conclude that in the present case the policies favoring preclusion are overcome for an "extraordinary reason," namely, "the failure of the prior litigation to yield a coherent disposition of the controversy."[35]

---

[33] *Sopha,* 230 Wis. 2d at 235–36 (quoting *Patzer v. Bd. of Regents,* 763 F.2d 851, 856 (7th Cir. 1985)).

[34] *See Sopha,* 230 Wis. 2d at 236–37.

[35] Restatement (Second) of Judgments § 26(1)(f) (1982).

¶ 40. In *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 601 N.W.2d 627 (1999), this court adopted a § 26(1)(f) "special circumstances" exception, addressing the narrow issue of multiple injuries with long latency periods that result from exposure to asbestos.[36] The court recognized that to "blindly apply" the doctrine of claim preclusion without exceptions does not further a policy of claim preclusion to render justice, but rather undermines it.[37]

■

¶ 41. The exception we adopt is as follows: When an action between parties or their privies does not explicitly determine the location of a boundary line, the doctrine of claim preclusion will not bar a future declaratory judgment action to determine the proper location of the boundary line.

¶ 42. The narrowly drawn exception we adopt today serves important policy considerations.

¶ 43. First, strict application of the doctrine of claim preclusion in the present case may result in over-litigation in cases involving real property dis-

---

[36] *Sopha,* 230 Wis. 2d at 236–37 ("A holding that claim preclusion bars a second action would force claimants to choose between seeking recovery for non-malignant asbestos-related injuries ... or waiting for the development of more serious malignant injuries. [The earlier claims of those who wait would likely be barred by applicable statutes of limitations.]").

[37] *Id.* at 235–36.

"Wisconsin law does not treat [claim preclusion] as an ironclad rule which must be implacably applied whenever its literal requirements are met, regardless of any countervailing considerations." *Sopha,* 230 Wis. 2d at 235 (quoting *Patzer v. Bd. of Regents,* 763 F.2d 851, 856 (7th Cir. 1985)).

putes.[38] Faced with the prospect that they will forever be foreclosed from having boundary lines judicially determined in the future if they fail to litigate the issue in even the most simple lawsuit involving real property, parties will litigate the issue, even when it is apparently not in dispute.

¶ 44. There is no shortage of everyday situations that may implicate the location of a boundary line. The plaintiff's counsel mentioned just a few at oral argument: a pet strays onto a neighbor's property; a child throws his or her ball into the neighbor's flowerbed; trees overhang the neighbor's shed; guests at a party wander onto the neighbor's property. If any of these situations results in a final judgment on the merits without a determination of the boundary line, the parties (and their privies) would, under the defendant's theory of the present case, forever be precluded from determining the location of the boundary line.[39]

¶ 45. Second, strict application of the doctrine of claim preclusion in the present case may discourage individuals from promptly settling lawsuits relating to real property. Parties may fear that without adequate discovery, any stipulated dismissal on the merits could terminate rights or claims they had yet to even discover were potentially implicated.

¶ 46. Lastly, strict application of the doctrine of claim preclusion in the present case places process over truth. The boundary line is important to the parties in

[38] *Developments in the Law Res Judicata,* 65 Harv. L. Rev. 818, 820 (1952).

[39] Further, application of claims preclusion without an exception would seem to conflict with Wis. Stat. § 841.01, whereby any person, at any time, may seek a declaration of interests in real property "against any person claiming a conflicting interest . . . ."

539

the present litigation and future owners of the properties and should be decided on the merits once and for all. Allowing litigation about the boundary line will produce a final judgment that definitively settles the issue and can be recorded to put the public on notice. The legal system should, in the present case, be more concerned with deciding the location of the boundary line than with strictly applying the doctrine of claim preclusion.

¶ 47. The parties in the 1982 action believed the boundary line was at the line fence. A survey in 2000 showed the line fence was not on the boundary line. Neither the parties to the present litigation, nor their predecessors in title, have ever litigated the location of the boundary line. The boundary line can be determined in the present case, without repeating prior litigation.

¶ 48. Claim preclusion is grounded on a desire to maintain reliable and predictable legal relationships. Public policy seeks to ensure that real estate titles are secure and marketable, and therefore the doctrine of claim preclusion ordinarily will apply in property cases. But the strict application of the doctrine of claim preclusion in the present case creates uncertainty. The policies favoring preclusion of the 2001 action are overcome, because the 1982 action, in the words of Restatement (Second) of Judgments, "failed to yield a coherent disposition of the controversy"[40] and "has left the parties not in a state of repose but in an unstable and intolerable condition."[41]

¶ 49. We hold that barring the declaratory judgment action (and the trespass and conversion action) to

---

[40] Restatement (Second) of Judgments § 26 (1)(f) (1982).

[41] *Id.* § 26, cmt. i, illus. 9.

determine the location of the boundary line, when that line has not been previously litigated, undermines the policies that are at the foundation of the doctrine of claim preclusion. The unique nature of a claim to identify the location of a boundary line warrants this narrow exception.

¶ 50. We therefore conclude that important policy concerns exist that favor creation of a narrowly drawn exception in the present case, namely that when a prior action between the parties or their privies does not explicitly determine the location of a boundary line between the properties, the doctrine of claim preclusion will not bar a later declaratory judgment action to determine the location of the boundary line.

¶ 51. Thus the present action is not barred by the doctrine of claim preclusion, and the action may proceed.

## IV

¶ 52. Before we conclude, we must briefly address some confusion in decisions in the court of appeals about applying a fairness element in the doctrine of claim preclusion. The concept of fairness underlies the doctrines of both claim and issue preclusion.[42] Fairness

---

[42] *Marten Transp., Ltd. v. Rural Mut. Ins. Co.,* 198 Wis. 2d 738, 743, 543 N.W.2d 541 (Ct. App. 1995) ("The doctrines of [issue preclusion and claim preclusion] are founded upon principles of fundamental fairness.").

Similar statements about fairness being a policy underlying the doctrines of claim preclusion and issue preclusion appear in court of appeals decisions. *See, e.g., State ex rel. Hawazen Establishment v. Town of Linn,* No. 94–3237, unpublished slip op. at 3 (Wis. Ct. App. Oct. 25, 1995) ("Second, and more importantly, [claim preclusion] is an equitable doctrine founded on principles of fundamental fairness.").

is an element in the doctrine of issue preclusion,[43] but this court has not adopted fairness as a factor in the doctrine of claim preclusion.[44]

---

[43] *N. States Power Co. v. Bugher,* 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995); *Michelle T. v. Crozier,* 173 Wis. 2d 681, 686, 495 N.W.2d 327 (1993).

[44] Although the court has discussed fairness in claim preclusion cases, the discussion has not adopted fairness as an element of the doctrine. For example, in *In re Custody of D.M.M.,* 137 Wis. 2d 375, 381–82, 404 N.W.2d 530 (1987), the court wrote that "fairness is one aspect of the application of res judicata." However, the opinion suggests that the court was discussing issue, not claim, preclusion.

Fairness has also been discussed in relation to a determination of whether privity existed between parties for application of the doctrine of claim preclusion. In determining the application of the doctrine of claim preclusion, courts ask whether the nonparty has had a full and fair opportunity to determine the issue.

For example, in *Pasko v. City of Milwaukee,* 2002 WI 33, ¶ 22, 252 Wis. 2d 1, 643 N.W.2d 72, the court was faced with whether police officers and the Milwaukee Police Association were in privity, the officers having brought the first suit, the union the second. The court concluded that the interests of the officers and the union were different and the two were not in privity, stating, "We have therefore recognized that, when deciding whether to apply claim preclusion to a nonparty's action, it is appropriate to consider whether such application will result in unfairness to the nonparty." The discussion makes clear that the *Pasko* court was discussing the "privity" requirement of claim preclusion.

In *McCourt v. Algiers,* 4 Wis. 2d 607, 611, 91 N.W.2d 194 (1958), a discussion of fairness in the application of res judicata was also in the context of discussing privity. *See also Hernke v. Coronet Ins. Co.,* 72 Wis. 2d 170, 178, 240 N.W.2d 382 (1976) (citing *McCourt:* "Fairness is one aspect of the application of res judicata.").

¶ 53. The theory is that the doctrine of claim preclusion rests on justice (fairness) being served by attributing finality to judgments rather than by allowing courts to make second efforts at improved results.[45] A court's final judgment on the merits orders parties' legal rights and duties with respect to the particular transaction or known set of facts that gave rise to the first suit.[46] Individuals cannot act or plan in the absence of certainty as to those rights and duties. Thus claim preclusion is strictly applied.

¶ 54. The United States Supreme Court has expressed this view, stating that "fairness" is not an element of claim preclusion, as follows:

> The doctrine of res judicata [claim preclusion] serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties."[47]

These cases should not be read to graft a "fundamental fairness" element onto the doctrine of claim preclusion.

[45] "Fairness further argues for the predictable and consistent application of relatively wooden preclusion rules without overly sizable or flexible exceptions. Such a scheme enables a person to rely on prior adjudication, while ensuring even-handed treatment by the doctrine." Casad & Clermont, *supra* note 14, at 33.

[46] Vestal, *Res Judicata/Preclusion* V-8–9 (1969).

[47] *Federated Dep't Store v. Moitie,* 452 U.S. 394, 401 (1981) (citation omitted).

¶ 55. This reasoning makes clear that an ad hoc exception to the doctrine of claim preclusion cannot be justified simply by concluding that it is too harsh to deny an apparently valid claim by balancing the values of claim preclusion against the desire for a correct outcome in a particular case.[48] Case-by-case exceptions to the application of the doctrine of claim preclusion based on fairness "weaken the repose and reliance values of [claim preclusion] in all cases."[49] Nevertheless, narrow, clear, special circumstances exceptions to claim preclusion have been recognized; they are viewed as less likely to undermine certainty in the doctrine of claim preclusion than are case-by-case determinations based on fairness.

¶ 56. In contrast, fundamental fairness plays a significant role in the application of issue preclusion to bar re-litigation.[50] The fundamental fairness standard

[48] 18 Charles Alan Wright et al., *Federal Practice and Procedure: Jurisdiction 2d* § 4415, at 380 (2002).

[49] 18 Wright et al., *supra* note 48, § 4415 at 364 ("But for the most part, it is better to avoid weakening claim preclusion out of sympathy for the plight of particular plaintiffs and lack of sympathy for particular defendants. The whole doctrine of claim preclusion rests on the determination that justice is better served by attributing finality to judgments that may be wrong than by second efforts to improve results. Ad hoc exception for a few individual cases may not rend the protective fabric of claim preclusion for all cases, but there must be some better justification for depriving particular defendants of the protection afforded most.").

[50] *Michelle T.,* 173 Wis. 2d at 687–88 ("Formalistic requirements . . . have gradually been abandoned in favor of a looser, equities-based interpretation of the [issue preclusion] doc-

in the doctrine of issue preclusion emerged in Wisconsin and federal courts out of a general loosening of the formal requirements of issue preclusion.[51] Formalistic requirements have been abandoned in favor of a looser, equities-based interpretation of the doctrine of issue preclusion.[52] Wisconsin courts have adopted a flexible approach toward the application of issue preclusion.[53]

¶ 57. The different treatment of issue preclusion and claim preclusion is based on the differences in the two doctrines.[54] A precluded issue under issue preclusion does not necessarily terminate the subsequent litigation, whereas the subsequent litigation ceases when the doctrine of claim preclusion applies. When issue preclusion is applied, the rights of persons not parties to the original litigation may be implicated; nonparties (except those in privity with a party in the prior action) are not implicated in claim preclusion.[55]

---

trine."). *See also Lindas,* 183 Wis. 2d at 559 ("[C]ourts consider an array of factors in deciding whether issue preclusion is [fair and] equitable in a particular case."); Shapiro, *supra* note 11, at 48.

[51] *Michelle T.,* 173 Wis. 2d at 689–91.

[52] *Michelle T.,* 173 Wis. 2d at 687–88 ("Today, federal and state courts balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims before a jury when deciding whether to permit parties to collaterally estop one another."); *see also Lindas,* 183 Wis. 2d at 559 ("[C]ourts consider an array of factors in deciding whether issue preclusion is [fair and] equitable in a particular case.").

[53] *Michelle T.,* 173 Wis. 2d at 690.

[54] For a discussion and chart comparing the rules and exceptions to claim preclusion and issue preclusion, see Casad & Clermont, *supra* note 14, at 43–45.

[55] For discussions of issue preclusion, *see N. States Power Co.,* 189 Wis. 2d at 550 ("Issue preclusion refers to the effect of

¶ 58. As a consequence of these differences between the two doctrines, the policies of finality and repose play a weaker role in issue preclusion than in claim preclusion. The elements of issue preclusion are therefore often interpreted with flexibility to limit issue preclusion and to exclude issue preclusion when its application would be unfair.[56]

¶ 59. We raise the differences between issue preclusion and claim preclusion and the application of fairness to the doctrine of issue preclusion because, as the defendant correctly points out, the court of appeals in this case, and in other cases, has improperly added fairness as a fourth element in the doctrine of claim preclusion. Both the majority and dissenting opinions in the present case in the court of appeals incorrectly refer to "fairness" as an element of claim preclusion. The majority opinion opined: "However, even where these requirements [of claim preclusion] are satisfied, the ultimate application of claim or issue preclusion must also satisfy the additional factor of fairness."[57]

a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action."); *Michelle T.*, 173 Wis. 2d at 687 (issue preclusion "is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties."); Restatement (Second) of Judgments § 27 (1982)("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

[56] Shapiro, *supra* note 11, at 46–48.

[57] *Kruckenberg*, 274 Wis. 2d 424, ¶ 8 (citing *Steffen v. Luecht*, 2000 WI App 56, ¶ 28, 233 Wis. 2d 475, 608 N.W.2d

The dissenting opinion explained: "In my judgment, the majority opinion represents an unduly rigid application of claim or issue preclusion. I would hold that the application of the doctrine against Kruckenberg does not pass the fairness test of the inquiry."[58]

¶ 60. Several other published decisions of the court of appeals appear to adopt fairness as the fourth element in the doctrine of claim preclusion,[59] as do several unpublished decisions of the court of appeals.[60]

---

713). "As we indicated previously, even when the threshold requirements for claim preclusion are satisfied, we still must determine whether the application of the doctrine is fair to Kruckenberg." *Kruckenberg,* 274 Wis. 2d 424, ¶ 20.

[58] *Kruckenberg,* 274 Wis. 2d 424, ¶ 24 (Nettesheim, J., concurring in part, dissenting in part).

[59] *See, e.g., Menard v. Liteway Lighting Prods.,* 2004 WI App. 95, ¶ 29, 273 Wis. 2d 439, 685 N.W.2d 365, review granted, ("Claim preclusion does have fairness as an essential principle and must never be applied to deprive a party of the opportunity for a full and fair determination."); *Steffen v. Luecht,* 2000 WI App 56, ¶ 28, 233 Wis. 2d 475, 608 N.W.2d 713 ("Even where the threshold requirements of claim preclusion are satisfied, the ultimate application of the claim preclusion rests on an important additional factor—fairness."); *Haeuser v. Haeuser,* 200 Wis. 2d 750, 762, 548 N.W.2d 535 (Ct. App. 1996) ("Res judicata, like divorce, is also equity based, relying on principles of fundamental fairness." (citing *Desotelle v. Cont'l Cas. Co.,* 136 Wis. 2d 13, 21, 400 N.W.2d 524 (1986)); *Stuart v. Stuart,* 140 Wis. 2d 455, 461–62, 410 N.W.2d 632 (Ct. App. 1987) ("In applying the doctrine of [claim preclusion], the essential principle is fairness. . . . Here, applying the [claim preclusion] doctrine would violate the principle of fairness.").

[60] *See, e.g., In re Termination of Parental Rights to Genesis M.,* Nos. 04–2379, 04–2380, unpublished slip op. at 1 n.4 (Wis. Ct. App., Jan. 19, 2005) ("While *Michelle T.* references issue preclusion only, both parties here suggest that [the fairness analysis] applies equally to a consideration of applying claim

¶ 61. The source of a "fairness element" in the doctrine of claim preclusion in court of appeals decisions appears to be *Desotelle v. Continental Casualty Co.*, 136 Wis. 2d 13, 400 N.W.2d 524 (1986). In *Desotelle*, the court of appeals noted that to apply the doctrines of claim and issue preclusion in that case would be grossly and manifestly unfair. *Desotelle* cites an issue preclusion case, *Crowall v. Heritage Mutual Insurance Co.*, 118 Wis. 2d 120, 125–26, 346 N.W.2d 327 (Ct. App. 1984), for the proposition that in claim preclusion cases the fundamental fairness element applies.

¶ 62. The court of appeals decisions requiring a court to conduct a "fundamental fairness" analysis in applying the doctrine of claim preclusion import the fairness concept from issue preclusion cases without articulating a rationale for the importation. Furthermore, the importation of a fairness analysis to claim preclusion contravenes basic policies underlying the-

preclusion."); *Isermann v. Isermann*, No. 03–0354, unpublished slip op. at 3 (Wis. Ct. App. Oct. 29, 2003) ("However, even where these requirements are satisfied, the ultimate application of claim or issue preclusion must also satisfy the additional factor of fairness."); *Mark Schlise Revocable Trust v. Beaver*, No. 94–0155, unpublished slip op. at 3 (Wis. Ct. App. Oct. 4, 1994) ("Most important of all, fairness is one aspect of the application of [claim preclusion]. Thus, the defense of [claim preclusion] cannot be raised even where it is applicable, if it is unfair." (citation omitted)); *Centnarowicz v. Park Falls Credit Union*, No. 88–0375, unpublished slip op. at 1 (Wis. Ct. App. Dec. 27, 1988) ("Finally, even if [claim preclusion] would bar the Centnarowiczes' suit, the trial court should have declined to impose the doctrine in the interest of fairness because they did not fully litigate their claims in the foreclosure proceedings."); *Bruha v. Goodman*, No. 87–1334, unpublished slip op. at 1 (Wis. Ct. App. Aug. 24, 1988) ("In applying [claim preclusion], the essential principle is fairness.").

doctrine of claim preclusion. Under these circumstances, the efficacy of these court of appeals decisions as precedential or persuasive authority is limited. For these reasons, we depart from stare decisis[61] and disavow any language in the decisions of the court of appeals to the extent that the language requires a court to conduct a "fundamental fairness" analysis in applying the doctrine of claim preclusion or allows litigation of an otherwise barred claim to continue simply because in that particular case, application of the doctrine of claim preclusion might appear unfair.

* * * *

¶ 63. We conclude that the case at bar presents a special circumstance to which the doctrine of claim preclusion will not apply, namely when a prior action between parties or their privies does not explicitly determine the location of a boundary line between their properties, claim preclusion will not bar a later declaratory judgment action to determine the location of the boundary line.[62] Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for proceedings not inconsistent with this decision.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

■■■■■

---

[61] *See Johnson Controls v. Employers Ins. of Wausau,* 2003 WI 108, ¶¶ 94–100, 264 Wis. 2d 60, 665 N.W.2d 257.

[62] The trespass and conversion claim, based on the defendant's conduct after the 1982 action and on a determination of the location of the boundary line between the plaintiff's and defendant's properties, may also go forward.