# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1496 |
| COMPLETE TITLE: | Federal National Mortgage Association, Plaintiff-Respondent, v. Cory Thompson, Defendant-Appellant, Unknown Spouse of Cory Thompson, Defendant. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | May 24, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 19, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Amy Smith |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant, there were briefs and an oral argument by *Christopher Stroebel* and *Stroebel Law*, *LLC*, Madison.

For the plaintiff-respondent, there was a brief and an oral argument by *Thomas C. Dill* and *BP Peterman Law Group*, *LLC*, Brookfield.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1496
(L.C. No. 2014CV3377)

STATE OF WISCONSIN       :       IN SUPREME COURT

**Federal National Mortgage Association,**

     **Plaintiff-Respondent,**

     **v.**

**Cory Thompson,**

     **Defendant-Appellant,**

**Unknown Spouse of Cory Thompson,**

     **Defendant.**

**FILED**

**MAY 24, 2018**

Sheila T. Reiff
Clerk of Supreme Court

APPEAL from an order of the Circuit Court for Dane County. *Affirmed.*

¶1 SHIRLEY S. ABRAHAMSON, J. This appeal comes before the court on certification by the court of appeals.[1] Cory Thompson, the debtor defendant, appeals an order of the Dane County Circuit Court, Amy Smith, Judge, granting Federal

---

[1] Fed. Nat'l Mortg. Ass'n v. Thompson, No. 2016AP1496, unpublished certification (Wis. Ct. App. June 29, 2017).

National Mortgage Association a foreclosure judgment and a monetary judgment of $152,355.98, plus any amounts held in escrow, interest after August 16, 2012, and costs incurred by Federal National Mortgage Association.[2]

¶2 The issue certified is as follows: Where a foreclosure action brought on a borrower's default on a note has been dismissed, is the lender barred by claim preclusion from bringing a second foreclosure action on the borrower's continuing default on the same note?

¶3 Essentially, we must answer the following question: When a foreclosure action brought on the borrower's default on the note has been dismissed with prejudice,[3] and the lender had not validly accelerated payment of the amount due under the note, does claim preclusion bar the lender from bringing a second foreclosure action based upon the borrower's continuing default on the same note?

¶4 We conclude that when a lender does not validly accelerate payment of the amount due under the note and a foreclosure action brought on the borrower's default on an installment payment under the note has been dismissed with prejudice, claim preclusion does not bar the lender from

---

[2] Federal National Mortgage Association replaced Bank of America as the plaintiff in the instant case in December 2015.

[3] For a summary of the facts and decision in the previous action in 2010, see BAC Home Loans Servicing LP v. Thompson, No. 2013AP210, unpublished slip op. (Wis. Ct. App. Dec. 19, 2013).

2

bringing a subsequent foreclosure action based upon the borrower's continuing default on the same note.

¶5 For an earlier action to bar a subsequent action under the doctrine of claim preclusion, there must be, among other elements, "an identity of causes of action in the two suits[.]" N. States Power Co. v Bugher, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995).

¶6 There is no identity of causes of action in the instant case and in the earlier lawsuit. The matters that were litigated or might have been litigated in the earlier lawsuit are not the same as those in the instant case. A different set of operative facts predicated upon separate and distinct defaults on the note is alleged in each lawsuit.

¶7 Upon dismissal of the first lawsuit, the parties continued the same contractual relationship with the same continuing obligations they had before the commencement of the first lawsuit. The borrower's default resulting from the borrower's failure to make an installment payment due after dismissal of the first lawsuit was not and could not have been litigated in the first lawsuit. Thus, the failure of the borrower to pay an installment after the termination of the first lawsuit created a new set of operative facts upon which the lender could base a subsequent foreclosure action.

¶8 After the first lawsuit, the lender gave new notice of intent to accelerate payment. The second lawsuit alleged a different date of default than was alleged in the first lawsuit. These constitute new facts giving rise to a new and subsequent

default and a different transaction from that presented in the first foreclosure action.

¶9 Additionally, the parties raised and addressed the issues of whether the circuit court erred at trial by admitting a copy of the promissory note into evidence and whether Federal National Mortgage Association proved that it had possession of the original wet-ink promissory note.[4]

¶10 We conclude that these additional issues are governed by our decision in Deutsche Bank National Trust Co. v. Wuensch, 2018 WI 35, ___ Wis. 2d ___, ___ N.W.2d ___.

¶11 Accordingly, we affirm the order of the circuit court.

I

¶12 The facts are undisputed for purposes of this review.

¶13 In November 2004, Cory Thompson executed a promissory note payable to America's Wholesale Lender for $162,800.00, secured by a mortgage on real property. The note was endorsed in blank by America's Wholesale Lender. The note contained an acceleration clause stating that the holder of the note may require Thompson to pay the full amount of unpaid principal plus interest immediately under the following conditions:

---

[4] When this court grants direct review upon certification, it acquires jurisdiction over all issues, not merely the issues certified or the issue for which the court accepts the certification. Wis. Const. art. VII, § 3(3); Wis. Stat. §§ 808.05(2), 809.61; State v. Stoehr, 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986).

(1)     Thompson must have defaulted by failing to make a monthly payment on the date that it was due;

(2)     the holder of the note must have sent written notice to Thompson stating that it may accelerate the payments under the note if Thompson fails to cure the default by a given date; and

(3)     the amount of time in which Thompson is afforded the opportunity to cure his default must not be less than 30 days after the date on which the notice is mailed or otherwise delivered to Thompson.

¶14   In November 2010, BAC Home Loans Servicing, LP, (formerly Countrywide Home Loans Servicing, LP) filed a lawsuit against Thompson.  The complaint alleged that Thompson failed to make required payments on the note as of April 2009.  In its complaint, BAC Home Loans purported to accelerate the debt, which made the principal balance of $153,202.53 immediately payable in full.  BAC Home Loans sought a money judgment in the full amount owed under the note and sought to foreclose on the property securing the note.

¶15   At a court trial held on August 16, 2012, the circuit court determined that BAC Home Loans failed to present sufficient evidence to prevail in its foreclosure action and dismissed the lawsuit with prejudice.  The circuit court reasoned that BAC Home Loans failed to present evidence of the original notice of intent to accelerate full payment and failed to present evidence that BAC Home Loans was in possession of the

5

original wet-ink note (i.e., that BAC Home Loans was the holder of the note with the right to enforce the note).

¶16 In March 2014, Bank of America, N.A., (the entity servicing Thompson's loan beginning in 2011), sent Thompson a notice of intent to accelerate payment of the note. The notice of intent to accelerate payment informed Thompson of the amount due to cure his default ($89,586.63), when payment was due (on or before May 4, 2014), and where to remit payment. Thompson did not cure his default on or before May 4, 2014.

¶17 In December 2014, Bank of America filed a complaint initiating the instant lawsuit. The complaint alleged that Thompson had failed to make payments on the note as of September 2009 and that because Bank of America had accelerated the debt, the principal balance of $152,355.98 was immediately payable in full.

¶18 Thompson moved to dismiss the December 2014 lawsuit, arguing that it was barred by the doctrine of claim preclusion.

¶19 The circuit court reasoned that the 2010 lawsuit and the instant 2014 lawsuit involved the same parties, the same note and mortgage, the same "essential" allegations of default, and the same remedy. According to the circuit court, the only difference between the 2010 and 2014 lawsuits was the different default period. The 2010 lawsuit was based on a default as of April 2009, and the 2014 lawsuit was based on a default as of September 2009.

¶20 The circuit court concluded that claim preclusion barred the portion of Bank of America's default claim that was

alleged to have occurred between April 2009 and August 16, 2012, the date of the trial in the 2010 lawsuit. The circuit court further concluded that any default claim alleged to have occurred after August 16, 2012, "remain[ed] viable."

¶21 The circuit court explained that applying claim preclusion to any default alleged to have occurred after judgment was entered in the 2010 lawsuit would "be analogous to parties in a contract litigating to conclusion one contract violation, and then being forever barred from litigating subsequent contract violations. Surely, the policies behind claim or issue preclusion do not contemplate such a result."

¶22 Accordingly, Bank of America amended its complaint to allege a date of default occurring after the trial in the 2010 lawsuit. The amended complaint alleged that Thompson had failed to make payments on the note as of September 2012 and that on acceleration of the debt due, Thompson owed a principal balance of $152,141.69.

¶23 A court trial was held on May 12, 2016. Prior to calling any witnesses, Federal National moved to admit into evidence a purported copy of the note. Counsel for Federal National presented the copy of the note, along with a document purporting to be the original wet-ink note. Thompson objected, stating that he was unable to tell whether the purported original wet-ink note was in fact the original wet-ink note or whether either document was identical to the original document that he signed in November 2004.

7

¶24 The circuit court visually compared the copy of the note with the document that Federal National's counsel presented to the court as the original wet-ink note. The circuit court observed that the document presented by counsel as the original note appeared to be the original wet-ink note. The circuit court admitted the copy of the original wet-ink note based on the court's visual comparison of the original and copy and because the circuit court viewed the copy as self-authenticating.

¶25 The circuit court granted Federal National a monetary judgment of $152,355.98——plus any amounts held in escrow, costs, and interest after August 16, 2012——along with a judgment of foreclosure to satisfy the monetary judgment. Thompson appealed.

¶26 The court of appeals certified the issue as follows: Where a foreclosure action brought on a borrower's default on a note has been dismissed, is the lender barred by claim preclusion from bringing a second foreclosure action on the borrower's continuing default on the same note?

II

¶27 We begin by setting forth the standard of review applicable to the certified issue.

¶28 The certified issue involves the application of the doctrine of claim preclusion to undisputed facts. "The question of whether claim preclusion applies under a given factual scenario is a question of law that this court reviews de novo." N. States Power Co., 189 Wis. 2d at 551 (citing DePratt v. West

8

Bend Mut. Ins. Co., 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983)).

### III

¶29 We address whether the doctrine of claim preclusion applies to the undisputed facts in the instant action.

¶30 Under the doctrine of claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." N. States Power Co., 189 Wis. 2d at 550 (brackets in original); Lindas v. Oday, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994); DePratt, 113 Wis. 2d at 310. "Claim preclusion thus provides an effective and useful means to establish and fix the rights of individuals, to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, to prevent inconsistent decisions, and to encourage reliance on adjudication." Kruckenberg v. Harvey, 2005 WI 43, ¶20, 279 Wis. 2d 520, 694 N.W.2d 879.[5]

¶31 Three elements must be present for an earlier action to bar a subsequent action: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent

---

[5] For further discussion of the public policies underlying the doctrine of claim preclusion, see Kruckenberg v. Harvey, 2005 WI 43, ¶¶19-22, 279 Wis. 2d 520, 694 N.W.2d 879, and accompanying footnotes.

9

jurisdiction." N. States Power Co., 189 Wis. 2d at 551; DePratt, 113 Wis. 2d at 311.

¶32 The parties do not dispute, and we agree, that only the second factor of claim preclusion, that is, identity between causes of action in the two lawsuits, is at issue in the present case.

¶33 In determining whether there is identity between causes of action for purposes of applying claim preclusion, Wisconsin courts apply the "transactional approach" as described in Restatement (Second) of Judgements. Kruckenberg, 279 Wis. 2d 520, ¶25; N. States Power Co., 189 Wis. 2d at 553-54; DePratt, 113 Wis. 2d at 311-12.

¶34 The Restatement explains that the transactional approach views a claim in factual terms and coterminous with the transaction, rather than in terms of legal theories:

> The present trend is to see a claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement (Second) of Judgments § 24 cmt. a (1982); DePratt, 113 Wis. 2d at 311.

¶35 Section 24(2) of the Restatement (Second) of Judgments describes the "transactional approach" in terms of the facts as follows:

10

> What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24(2) (1982); N. States Power Co., 189 Wis. 2d at 553-54.

¶36 "The transactional approach to claim preclusion reflects 'the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so.'" Kruckenberg, 279 Wis. 2d 520, ¶27 (quoting the Restatement (Second) of Judgments § 24 cmt. a (1982)). In other words, "[t]he concept of a transaction connotes a common nucleus of operative facts." Kruckenberg, 279 Wis. 2d 520, ¶26.

¶37 Whether a common nucleus of operative facts is involved in the two actions at issue is determined pragmatically by "look[ing] to see if the claim asserted in the second action should have been presented for decision in the earlier action, taking into account practical considerations relating mainly to trial convenience and fairness." Kruckenberg, 279 Wis. 2d 520, ¶27 (quoting Robert C. Casad & Kevin M. Clermont, Res Judicata: A Handbook on its Theory, Doctrine, and Practice 66 (2001)).

¶38 The 2010 lawsuit and the instant case do not share "a common nucleus of operative facts." Each lawsuit relates to a set of operative facts that occurred at a different time. In the 2010 lawsuit, the claim asserted was that Thompson had defaulted on the note as of April 2009. In the instant case,

11

the amended complaint[6] asserts that Thompson defaulted on the note as of September 2012 (i.e., after judgment was entered in the 2010 lawsuit).

¶39 Thompson's brief assumes that an identity of claims exists between the 2010 lawsuit and the claims in the instant case because the same total amount, namely the entire balance on the note, was the remedy sought in both lawsuits. This assumption rests on another assumption, namely that an effective acceleration of payments occurred in the 2010 lawsuit. Thompson conceded at oral argument, however, that payment of the note was not effectively accelerated in the 2010 lawsuit.

¶40 Nevertheless, Thompson continues to assert that the instant case is barred by claim preclusion. In support of his claim preclusion argument, Thompson relies on Johnson v. Samson Construction Corp., 704 A.2d 866 (Me. 1997), and U.S. Bank National Ass'n v. Gullotta, 899 N.E.2d 987 (Ohio 2008).[7]

¶41 In each of these cases, in ruling that the lender was forever barred from placing the entire balance of the note at issue once again in a second proceeding, the state supreme court assumed that full payment of the note had been validly

---

[6] The operative allegations in the instant case are in the amended complaint filed by Bank of America on August 14, 2015.

[7] The certification memorandum filed by the court of appeals explains that state courts have taken varied approaches to the question of the application of the doctrine of claim preclusion to a subsequent foreclosure action after a prior foreclosure action is dismissed.

accelerated and the entire balance of the note was the subject of the first lawsuit, which was dismissed with prejudice.

¶42  The Maine Supreme Court summarized its reasoning in Johnson that a lawsuit based on default of an accelerated debt barred a second lawsuit on the debt as follows:

> The promissory note between Johnson and Samson required 240 equal monthly payments of principal and interest.  However, the note's acceleration clause provided that "[i]f any default be made in any payment under this Note, and if such default is not made good within thirty (30) days after written notice of same, the entire unpaid principal and accrued interest shall become immediately due and payable without further demand."  Johnson's first cause of action alleged that Samson "defaulted on its obligations to the Plaintiff under the Note" and demanded payment of the entire unpaid principal balance.  This suit was an action for the accelerated debt.  Once Johnson triggered the acceleration clause of the note and the entire debt became due, the contract became indivisible.  The obligations to pay each installment merged into one obligation to pay the entire balance on the note.

Johnson, 704 A.2d 866, ¶8.

¶43  The Ohio Supreme Court also relied on a purportedly valid acceleration of the balance due on default in reaching its decision that a subsequent lawsuit on the note was barred.  It explained in Gullotta the distinction between the consequences for a second lawsuit of an initial action for recovery of an installment payment and of an initial action for recovery of the entire debt as follows:

> The key here is that the whole note became due upon Gullotta's breach, not just the installment he missed.  There is a distinction between an action for recovery of installment payments under an installment note where the entire principal is accelerated, and an

13

action to recover for nonpayment under an installment note where only the amount of the principal to date, and no future amount, is sought. The general rule that each missed payment in an installment loan gives rise to a separate cause of action does not hold true when there is an acceleration clause in the loan agreement[.]

Gullotta, 899 N.E.2d 987, ¶29.

¶44 Neither Thompson's arguments nor these cases upon which Thompson relies are persuasive in deciding the instant case in Thompson's favor. Why? Because in the instant case, unlike in the cases described above, no valid acceleration of the debt occurred in the 2010 lawsuit.

¶45 Generally, and in the instant case, there cannot be a valid acceleration of the debt without a default by the borrower. That is, the borrower's default is a condition precedent to the lender's right to accelerate the debt.

¶46 After a lawsuit based on the debtor's failure to make one or more payments is dismissed with prejudice but payment of the note was not validly accelerated because it was never proved that the borrower was actually in default, the parties are simply placed back into the position they held before the commencement of the lawsuit, with the same continuing obligations. See, e.g., Singleton v. Greymar Assocs., 882 So. 2d 1004 (Fla. 2004); Afolabi v. Atlantic Mortg. & Invest. Corp., 849 N.E.2d 1170 (Ind. App. 2006).

¶47 In the instant case, when the 2010 lawsuit against Thompson was dismissed with prejudice, it had the legal effect of conclusively establishing that Thompson was not in default for having missed installment payments due on the note up until

14

the date of trial in the 2010 lawsuit (i.e., August 16, 2012). Thus, because it was never proved in the 2010 lawsuit that Thompson was in default, the entire balance of the note was never validly accelerated.  In such circumstances, the parties are placed back into the position they held before the commencement of the lawsuit.  Thompson was obligated to continue making installment payments after the dismissal of the 2010 lawsuit, and claim preclusion does not prevent Federal National from suing Thompson for failing to make those payments.[8]

¶48 Accordingly, we conclude that the instant lawsuit alleging a default as of September 2012 is not barred by the doctrine of claim preclusion.

¶49 In the instant case, the debt was not validly accelerated in the 2010 lawsuit.  Claim preclusion should not bar the mortgagee from challenging a subsequent default payment solely because the mortgagee failed to prove in a prior action an earlier alleged default.  Preventing a mortgagee from suing to collect a subsequent default even after the earlier claimed default could not be established would essentially insulate the mortgagor from future mortgage foreclosure actions on the note merely because the mortgagor prevailed in the first action.

---

[8] We note that the 2010 lawsuit was dismissed with prejudice based on insufficient evidence.  We do not address the application of claim preclusion to a situation in which the prior lawsuit was dismissed due to a defect in substantive enforceability of the note.

15

¶50 The subject of the instant case is an alleged default in September 2012. In the prior lawsuit between the parties, the default was alleged to have occurred in April 2009. The instant lawsuit arises out of a different set of operative facts than those addressed in the prior lawsuit. The default alleged in the instant case could not have been litigated in the prior lawsuit. There is no identity of claims between the instant lawsuit and the prior lawsuit. Accordingly, we conclude that the instant lawsuit alleging a default as of September 2012 is not barred by the doctrine of claim preclusion.

IV

¶51 Before we end this opinion, we briefly address the following two additional issues the parties raised:

 (1) whether the circuit court erred at trial by admitting a copy of the note into evidence; and

 (2) whether Federal National proved that it had possession of the original wet-ink note.

¶52 These two issues are presented in and are governed by our decision in Deutsche Bank National Trust Co. v. Wuensch, 2018 WI 35, ___ Wis. 2d ___, ___ N.W.2d ___. With respect to these two issues, the facts of the instant case are substantially the same in all material respects to the facts presented in Deutsche Bank.

¶53 In Deutsche Bank, we concluded that a promissory note endorsed in blank constitutes self-authenticating commercial paper that may be enforced by the holder of the note. Deutsche Bank, ___ Wis. 2d ___, ¶¶23-24. We further concluded that the

16

circuit court did not err by admitting into evidence a copy of the promissory note that was endorsed in blank, noting that the copy of the note was compared side-by-side to the original and that generally speaking, a duplicate of a document is admissible to the same extent as the original.  Deutsche Bank, ___ Wis. 2d ___, ¶23.

¶54 We also concluded that because Deutsche Bank's counsel physically possessed the original note on his client's behalf at trial, Deutsche Bank proved that it had possession of the original promissory note and could bring the lawsuit.  Deutsche Bank, ___ Wis. 2d ___, ¶24.

¶55 In the instant case, counsel presented the original wet-ink note to the circuit court along with a copy of the note. The circuit court in the instant case, sitting as the finder of fact, determined that the purported original appeared to be the original wet-ink note.  Upon comparing the original wet-ink note to the copy of the note, the circuit court admitted the copy into evidence.

¶56 Consistent with our decision in Deutsche Bank, we conclude that Federal National proved that it possessed the original wet-ink note, that it could bring the lawsuit, and that the circuit court did not err in admitting a copy of the original wet-ink note at trial.

V

¶57 As to the certified issue, we conclude that when a lender does not validly accelerate payment of the amount due under the note and a foreclosure action brought on the

17

borrower's default on an installment payment under the note has been dismissed with prejudice, claim preclusion does not bar the lender from bringing a subsequent foreclosure action based upon the borrower's continuing default on the same note.

¶58 As to the additional issues raised by the parties, we conclude that Federal National proved that it possessed the original wet-ink note, that it could bring the lawsuit, and that the circuit court did not err in admitting a copy of the original wet-ink note at trial.

*By the Court.*—The order of the circuit court is affirmed.