# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP175 |
| COMPLETE TITLE: | Deutsche Bank National Trust Company, Plaintiff-Respondent-Petitioner, v. Thomas P. Wuensch, Defendant-Appellant, Heidi Wuensch, Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(no cite)

| | |
|---|---|
| OPINION FILED: | April 17, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 2, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | La Crosse |
| JUDGE: | Todd W. Bjerke |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J., dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Thomas C. Dill* and *BP Peterman Group*, Brookfield; *Robert W. Brunner* and *Bryan Cave LLP*, Chicago, Illinois; and *Kenneth Lee Marshall* and *Bryan Cave LLP*, San Francisco, California. There was an oral argument by *Kenneth Lee Marshall.*

For the defendant-appellant there was a brief filed by *Christa O. Westerberg, Susan M. Crawford, Aaron G. Dumas,* and *Pines Bach LLP*, Madison. There was an oral argument by *Christa O. Westerberg.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP175
(L.C. No. 2009CV752)

STATE OF WISCONSIN : IN SUPREME COURT

**Deutsche Bank National Trust Company,**

       **Plaintiff-Respondent-Petitioner,**

    **v.**

**Thomas P. Wuensch,**

       **Defendant-Appellant,**

**Heidi Wuensch,**

       **Appellant.**

**FILED**

**APR 17, 2018**

Shelia T. Reiff
Clerk of Supreme Court

REVIEW from a decision of the court of appeals. *Reversed.*

¶1 REBECCA GRASSL BRADLEY, J. This is a review of an unpublished court of appeals summary disposition reversing the La Crosse County Circuit Court's[1] foreclosure judgment against Thomas P. Wuensch in favor of Deutsche Bank National Trust

---

[1] The Honorable Todd W. Bjerke presiding.

Company (Deutsche Bank).[2] The circuit court admitted the promissory note signed by Wuensch (the Note) into evidence when offered by Deutsche Bank through its attorney, and permitted the Bank to enforce the Note, ruling that the original Note, endorsed in blank, was sufficient to establish possession. We reverse the court of appeals' summary disposition[3] and affirm the circuit court's judgment of foreclosure.

¶2 The issue before this court is whether presentment by a party's attorney of an original, wet-ink note endorsed in blank is admissible evidence and enforceable against the borrower without further proof that the holder had possession at the time the foreclosure action was filed. To answer this question, we must determine the evidence necessary to prove that an entity seeking to enforce a note against a borrower has the right to do so. We hold that presentment to the trier of fact in a mortgage foreclosure proceeding of the original, wet-ink note endorsed in blank, establishes the holder's possession and entitles the holder to enforce the note.

---

[2] Deutsche Bank's full title in this action is "Deutsche Bank National Trust Company as Trustee for American Home Mortgage Assets Trust 2007-2 Mortgage-Backed Pass Through Certificates, Series 2007-2, by American Home Mortgage Servicing Inc., its attorney-in-fact."

[3] Deutsche Bank Nat'l Trust Co. v. Wuensch, No. 2015AP175, unpublished order (Wis. Ct. App. Aug. 23, 2016).

## I. BACKGROUND

¶3   In December 2006, Wuensch signed an adjustable rate Note issued by HLB Mortgage for $301,500. Wuensch secured the Note with a mortgage he executed in favor of the mortgagee, Mortgage Electronic Registrations Systems, Inc. as nominee for HLB Mortgage, the lender. By the time this action was filed, HLB had transferred the Note to American Home Mortgage Servicing, Inc. (AHM),[4] HLB's parent entity, and AHM had endorsed the Note in blank.

¶4   It is uncontested that in February 2008, Wuensch defaulted. He failed to make any payment on the Note after February 2008 and has remained in default through the pendency of this foreclosure action. The events surrounding the default underlie the circuit court's ruling that "equity dictates that Wuensch be allowed one last opportunity to cure his default, because his default on the Note may have been caused by the actions of the preceding Note holders." They also color Wuensch's arguments on the primary issue regarding whether Deutsche Bank in fact possessed the original Note.

¶5   Wuensch's Note required him to remain current on all property taxes by paying into an escrow account serviced by the lender, which would pay his property taxes directly from the escrow account. His promised monthly mortgage payment, due the

---

[4] By the time the case was before the circuit court, AHM had changed its name to Homeward Residential, and subsequently merged with or was purchased by Ocwen Financial Services, the current servicer of the Note.

first of each month, totaled $1,487.68, consisting of $1,210.98 for the Note itself, plus $276.70, which went into escrow to cover property taxes.[5] In August 2007, although Wuensch was current on his mortgage payments, he received notice from the Town of Onalaska that his property taxes had not been paid. Around this time, Wuensch learned that AHM, then in possession of his Note, had filed for bankruptcy earlier in the month.

¶6 In a letter dated February 23, 2008, AHM informed Wuensch it had not received his February mortgage payment. Wuensch claimed he had submitted payment via Western Union on February 15, 2008. Wuensch's attempts to resolve the February payment issue were unsuccessful. Allegedly based on the recommendation of an AHM employee, Wuensch stopped making payments on the Note altogether. As a result, AHM sent Wuensch notice of acceleration dated March 4, 2008, indicating that he was in default and owed $2,355.89, which had become due on or after February 1, 2008. Regardless of why Wuensch stopped making payments, there is no dispute that AHM never received any mortgage payments from Wuensch after February 15, 2008.

¶7 Deutsche Bank filed this foreclosure action against Wuensch in August 2009, attaching a copy of the Note to the complaint. It elected to proceed to foreclosure under Wis. Stat. § 846.101 (2013-14), waiving any deficiency judgment against Wuensch, and consenting to Wuensch's continued occupancy

---

[5] The moneys held in the escrow account also covered hazard insurance and other costs and fees.

4

of the property until the circuit court entered confirmation of a sale.[6]

¶8 Deutsche Bank claimed to be the "lawful holder of said note and mortgage." During the life of the loan, Wuensch's Note and mortgage were transferred multiple times, ultimately landing with Deutsche Bank on August 4, 2009. Because of the nature of a note endorsed in blank, precisely how Deutsche Bank came into physical possession of the Note is not relevant. For purposes of enforcing the Note, it is enough that Deutsche Bank was in possession of the original Note at trial, a copy of which was attached to the complaint.

¶9 In his answer, Wuensch denied that Deutsche Bank was a holder entitled to enforce the Note and denied that any payments were past due. Wuensch also asserted the following affirmative defenses: material misrepresentation, laches, estoppel, lack of standing, improper joinder of parties, and lack of note. In an amended answer, Wuensch also alleged fraud and unclean hands by Deutsche Bank and again asserted that the Bank lacked the ability to foreclose.

¶10 Pretrial proceedings continued for five years before the case finally came before the circuit court for a bench trial. In May 2014, Deutsche Bank's attorney presented the original, wet-ink Note to the circuit court to inspect and asked the circuit court to admit into evidence a copy of the Note as a

---

[6] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

self-authenticating, "non-hearsay instrument . . . offered for its legal significance, not to prove the truth of the matter asserted."[7]  Wuensch's counsel objected on the bases of hearsay and lack of personal knowledge on the part of Deutsch Bank's counsel, while also asserting that Deutsche Bank's counsel was impermissibly acting as a witness.  The circuit court overruled these objections and after inspecting the Note, observed:

> THE COURT:  When I looked at the document purporting to be an original, looks like original ink on signatures and appears to be the same as what has now been marked as a copy Exhibit 1 . . . .
>
>  . . . .
>
> It will be admitted.

The circuit court then concluded that "plaintiff is, in my mind, the holder in due course of a note endorsed in blank and they can proceed on it."  Wuensch's counsel objected to the admission of the Note and questioned the validity of the signatures on and the assignment of the instrument, arguing that there were "no indentations on the initials" and "the assignments of the mortgage are relevant because of the false nature of them."  The circuit court responded, "the law is pretty clear that somebody that is holding a note endorsed in blank has the right to seek foreclosure of such a document" and that it did not think "the assignments were relevant when there's a note endorsed in blank."

---

[7] Deutsche Bank's counsel also moved to admit the mortgage, to which Wuensch's counsel made no objection.

¶11 Deutsche Bank called one witness at trial, Rasheed Blanchard, a loan analyst from Ocwen Financial Corporation, the entity that serviced the loan. He testified as to Wuensch's payment history and the processes by which Ocwen serviced the loan.

¶12 Wuensch testified regarding the difficulty he had contacting AHM to resolve the 2007 property tax issue, the payment history leading up to his default, and the events that followed his default. He also claimed that the Note presented by Deutsche Bank did not contain his original, wet-ink signature.

¶13 In December 2014, the circuit court issued findings of fact and conclusions of law in its judgment and order. It determined that Deutsche Bank "is entitled to a judgment of foreclosure of the Defendant's mortgage." It found Deutsche Bank:

> is the holder of the original Note, endorsed in blank. The Court is satisfied that the Plaintiff has in its possession the original ink Note. The Plaintiff produced the original Note at trial and the Court examined it. The Court is satisfied that it is the original Note executed by Wuensch on December 18, 2006. Exhibit 1 is a true and accurate copy of the original ink Note.

It further found Wuensch was in default on the Note in the principal amount of $315,233.64.[8]

¶14 The circuit court concluded that Wuensch's arguments regarding allegedly fraudulent practices associated with mortgage-backed securities comprised of pooled mortgages such as his own were "beyond the scope of this case." Relying on Dow Family, LLC v. PHH Mortgage Corp., 2014 WI 56, ¶21, 354 Wis. 2d 796, 848 N.W.2d 728, the circuit court ruled that "[u]nder the doctrine of equitable assignment, a mortgage automatically follows the assignment of the note." The circuit court applied the Dow Family holding that "security for a note is equitably assigned upon transfer of the note, without need for a written assignment." Pivotally, the circuit court held that "[t]he holder of an original note endorsed in blank has the right to enforce the note"; therefore, Deutsche Bank had standing to bring the foreclosure action against Wuensch.

¶15 The circuit court, however, exercised its equitable authority to delay entry of the foreclosure judgment and permit Wuensch the opportunity to return to the position he occupied prior to the default event of February 2008. It explained:

---

[8] The principal amount for which Wuensch was found liable exceeds the original principal amount in the Note because the Note provided for changes in the interest rate and the monthly payment, resulting in the amount of Wuensch's monthly payment not fully paying accrued interest. In the Note, Wuensch agreed "THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED" but the Note capped the principal amount at not more than 110% of the original amount.

> Even if the Plaintiff is without blame for the problems with Wuensch's mortgage, the same cannot be said about the preceding holders of his Note. Although the question of whether Wuensch's Note was fraudulently passed between creditors before it came into the Plaintiff's possession is beyond the scope of this case, the Court is convinced that the seemingly unregulated transferring of mortgages during the housing bubble and crash contributed to Wuensch finding himself in this position.

Accordingly, the circuit court stayed entry of the judgment until January 24, 2015, to allow Wuensch to cure the default by paying Deutsche Bank $347,826.03——the sum of the unpaid principal, plus expenses paid by Deutsche Bank for property taxes, hazard insurance, and other costs and fees. If Wuensch did not pay that amount by January 24th, the circuit court would enter judgment of foreclosure in favor of Deutsche Bank for the entire amount sought——totaling $455,641.85.

¶16 Wuensch appealed in September 2015 and the court of appeals summarily reversed the judgment of foreclosure. Deutsche Bank Nat'l Trust Co. v. Wuensch, No. 2015AP175, unpublished order (Wis. Ct. App. Aug. 23, 2016). Wuensch argued the circuit court lacked a factual basis to enter judgment of foreclosure against him because Deutsche Bank did not prove it was the holder of the original Note entitled to enforce it. Id. at 4. He contended that Deutsche Bank was required to present evidence not only that the purported original Note was in fact the original Note, but also that Deutsche Bank's counsel had obtained the Note from the Bank. Id. Wuensch insisted that possession alone of the purported original Note endorsed in blank was not enough to prove possession. Id.

9

¶17 The court of appeals agreed.  It held that Wuensch's pleadings and his objections as to authenticity and possession at trial placed "possession of the original note in dispute, and there is no dispute that this was an issue that the plaintiff had to prove at trial."  Id.  Citing Wis. Stat. §§ 906.02 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."), 906.03(1) ("which provides that a witness must take an oath before testifying"), and 901.04(2) ("a judge is to make preliminary determinations on the qualifications of a person to be a witness"), the court of appeals held as "axiomatic" the rule "that 'unsworn statements' have 'no proper place' as substitutes for evidence in a trial." Id. at 5 (citations omitted).  The court of appeals recognized the "difficulties" the Bank's counsel would have encountered had he attempted to testify as to his personal knowledge surrounding the Note and its possession. Id. at 5.  Nevertheless, the court of appeals held that the Bank was required to present testimony from a witness with personal knowledge who could verify possession of the Note by the Bank up to the moment Deutsche Bank's attorney presented the Note to the circuit court. Id. at 6-7.

¶18 Acknowledging that the "mandate reversing the judgment of foreclosure in this action may appear at first blush to elevate form over substance and to produce a highly inefficient result," the court of appeals nonetheless persisted in holding that possession by the Bank's counsel would not suffice to prove

10

possession by the Bank itself or the concomitant right to enforce the Note endorsed in blank. Id. at 8. Deutsche Bank filed a petition for review, which this court granted.

## II. STANDARD OF REVIEW

¶19 "Our review requires us to construe a statute and apply it to the facts of the case." Warehouse II, LLC v. DOT, 2006 WI 62, ¶4, 291 Wis. 2d 80, 715 N.W.2d 213. Ordinarily, a circuit court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [circuit] court to judge the credibility of the witnesses." Wis. Stat. § 805.17(2). Furthermore, "the decision whether to admit evidence is within the circuit court's discretion." State v. Zamzow, 2017 WI 29, ¶10, 374 Wis. 2d 220, 892 N.W.2d 637 (citing State v. Griep, 2015 WI 40, ¶17, 361 Wis. 2d 657, 863 N.W.2d 567), cert. denied, 138 S. Ct. 501 (2017). However, the application of a statute to the facts of a case is a question of law this court reviews de novo, although the court benefits from the analyses of the circuit court and court of appeals. Warehouse II, 291 Wis. 2d 80, ¶4 (first citing State v. Reed, 2005 WI 53, ¶13, 280 Wis. 2d 68, 695 N.W.2d 315; and then citing State v. Cole, 2003 WI 59, ¶12, 262 Wis. 2d 167, 663 N.W.2d 700).

## III. DISCUSION

¶20 In mortgage foreclosure actions, the plaintiff has the burden of proving the terms of indebtedness secured by a mortgage. Mitchell Bank v. Schanke, 2004 WI 13, ¶32, 268 Wis. 2d 571, 676 N.W.2d 849 (citing Doyon & Rayne Lumber Co. v.

11

Nichols, 196 Wis. 387, 390, 220 N.W. 181 (1928)) (noting the "requirement that the mortgagee prove the existence of debt in order to foreclose on the mortgage, as a mortgage cannot exist without a debt"); see PNC Bank, N.A. v. Bierbrauer, 2013 WI App 11, ¶10, 346 Wis. 2d 1, 827 N.W.2d 124. This includes verifying that foreclosure proceedings are maintained by the party with the right to enforce the note, a requirement that is not a mere formality. See Bierbrauer, 346 Wis. 2d 1, ¶10. It is in fact a foundational precondition for any foreclosure action, protecting borrowers from wrongful loss of their homes, affording lenders a procedure for enforcing notes, and providing certainty surrounding property rights in mortgages. See, e.g., David A. Dana, Why Mortgage "Formalities" Matter, 24 Loy. Consumer L. Rev. 505, 507-08 (2012); Elizabeth Renuart, Uneasy Intersections: The Right to Foreclose and the U.C.C., 48 Wake Forest L. Rev. 1205, 1212 (2013); Adam J. Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title, 63 Duke L.J. 637, 648 (2013).

¶21 In ascertaining who has the right to enforce a note, we begin with the language of the relevant statutes, a step the court of appeals mostly relegated to footnotes. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 663, 681 N.W.2d 110. Article 3 of the Uniform Commercial Code (U.C.C.), codified in Wisconsin at ch. 403 in

12

1995, provides that where a note is negotiable,[9] it may be enforced by a "holder." Wis. Stat. § 403.301. A "holder," as relevant here, includes "the person in possession of a negotiable instrument that is payable . . . to bearer." Wis. Stat. § 401.201(2)(km)1. A "bearer" includes a person in possession of an instrument endorsed in blank. Wis. Stat. § 401.201(2)(cm). "If endorsed in blank, an instrument becomes payable to bearer," and can be "negotiated by transfer of possession alone."[10] Wis. Stat. § 403.205(2); Bierbrauer, 346 Wis. 2d 1, ¶12.

---

[9] A note is a negotiable instrument, defined as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges," provided that all of the following apply:

> (1) The note "is payable to the bearer or to order at the time that it is issued or first comes into possession of a holder."

> (2) The note "is payable on demand or at a definite time."

> (3) "It does not state any other undertaking or instruction by" the borrower or lender (subject to a few, inapplicable exceptions).

Wis. Stat. § 403.104(1) (2013-14). The Note at issue here is unquestionably a negotiable instrument.

[10] A blank endorsement, or an endorsement in blank, is "[o]ne made by the mere writing of the indorser's name on the back of the note or bill, without mention of the name of any person in whose favor the indorsement is made, but with the implied understanding that any lawful holder may fill in his own name above the indorsement if he so chooses." Black's Law Dictionary 774 (6th ed. 1990) (also spelled "indorsement").

13

¶22 Wuensch makes a variety of arguments undercut by a plain reading of the statutes and application of relevant case law. First, Wuensch argues that Deutsche Bank is not a "holder." He asserts that self-authentication is not equivalent to showing physical possession. He also insists that physical possession of the original Note by Deutsche Bank's trial counsel does not make the Bank a "bearer" and that "unsworn statements" by trial counsel were insufficient to prove possession by Deutsche Bank.

¶23 We reject Wuensch's arguments and uphold the circuit court's admission of a copy of the original Note into evidence based upon the court's inspection of the original Note and its self-authentication. The circuit court compared the Note and the copy side-by-side, observed that the copy was identical to the original, and admitted the copy into evidence.[11] Wisconsin Stat. § 909.015(3) permits the trier of fact to compare specimens that have been authenticated, and Wis. Stat. § 909.02(9) provides that commercial paper is self-authenticating under chs. 401-411. Because the circuit court admitted the copy of the self-authenticating Note based upon a proper application of the law, its exercise of discretion was not erroneous.

---

[11] We note Wis. Stat. § 910.03 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

14

¶24 As a preliminary matter, we conclude that a person who possesses an original note endorsed in blank is the "holder" of that note. The "holder" is a person entitled to enforce the note. Wis. Stat. § 403.301. As Deutsche Bank's counsel physically possessed the original Note on his client's behalf at trial, § 403.301 is satisfied. This rule alone resolves the issue in favor of Deutsche Bank.

¶25 The rule that possession of an original note endorsed in blank confers a right to enforce the note is not a new concept or even one originating in the U.C.C. Deutsche Bank accurately explains in its briefing that the principle traces back to Lord Mansfield and took root in American common law as

early as 1895.[12] See Miller v. Race (1758), 97 Eng. Rep. 398; 1 Burr. 452 (Lord Mansfield) (KB) ("bank notes are paid by and received of the holder or possessor of them, as cash; and that

---

[12] William Murray, Earl of Mansfield, served as Chief Justice on the Court of King's Bench, the highest common law court in England, from 1756 to 1788. Bernard L. Shientag, Lord Mansfield Revisited——A Modern Assessment, 10 Fordham L. Rev. 345, 348-49 (1941). While the basic principles of negotiability and the enforcement of notes endorsed in blank were established prior to Lord Mansfield's tenure as Chief Justice, the holdings in Miller v. Race and its progeny were revolutionary in setting the course for modern doctrines on negotiable instruments. Edward L. Rubin, Learning from Lord Mansfield: Toward A Transferability Law for Modern Commercial Practice, 31 Idaho L. Rev. 775, 778 (1995). For example, they informed Blackstone's Commentaries on the Laws of England, which defined a "promissory note" as "a plain and direct engagement in writing, to pay a sum specified at the time therein limited to a person therein named, or sometimes to his order, or often to the bearer at large." 2 William Blackstone, Commentaries on the Laws of England 467 (Oxford 1766) (emphasis added); see also W. S. Holdsworth, Blackstone's Treatment of Equity, 43 Harv. L. Rev. 1, 10-11 (1929) ("Blackstone owed much to Lord Mansfield. . . . [W]e can see that in [Blackstone's] treatment of commercial law . . . as well as in his treatment of equity, he accepted and incorporated into his book the reasoning and the results of the decisions of Lord Mansfield . . . ." (footnotes omitted)). In the United States, these early cases also eventually led to codification in every state of the Uniform Negotiable Instruments Law, the precursor to the U.C.C. See, e.g., § 2675-9, ch. 356, Wis. Laws of 1899 ("The instrument is payable to bearer . . . [w]hen the only or last indorsement is an indorsement in blank."); see also Mark B. Greenlee & Thomas J. Fitzpatrick IV, Reconsidering the Application of the Holder in Due Course Rule to Home Mortgage Notes, 41 Unif. Com. Code L.J. 225 (2009). While a promissory note is no longer transferred as readily as cash, "the underlying purpose of negotiability——facilitating the transfer of debt instruments——remains relevant." See Rubin, supra, at 796. Wisconsin Stat. §§ 403.301 and 403.205(2), which permit the transfer of promissory notes endorsed in blank, likewise aid in the transferability of debt instruments.

in the usual way of negotiating bank notes, they pass from one person to another as cash, by delivery only and without any further inquiry or evidence of title, than what arises from the possession."); Dawson Town & Gas Co. v. Woodhull, 67 F. 451, 452 (8th Cir. 1895) ("When these notes were offered, they were in the hands of the plaintiff's attorneys. The legal presumption was that they had received them from the hands of their client . . . ."); see also Peacock v. Rhodes (1781), 99 Eng. Rep. 402, 403; 2 Doug. 633, 636 (Lord Mansfield) (KB) ("I see no difference between a note indorsed blank, and one payable to bearer. They both go by delivery, and possession proves property in both cases."). Wuensch argues that these cases are "inapposite" and outmoded. We disagree. Although the cases are not controlling authority, the principles derived from them persuasively inform the interpretation of Wisconsin's U.C.C., which has not displaced them. Wis. Stat. § 401.103(2) ("Unless displaced by the particular provisions of chs. 401 to 411, the principles of law and equity . . . shall supplement its provisions."); Met-Al, Inc. v. Hansen Storage Co., 844 F. Supp. 485, 489 (E.D. Wis. 1994) ("[P]re-Code case law is available to aid in interpretation of the UCC unless violative of its specific provisions.").

¶26 This rule is as widely supported today as it has been historically. See, e.g., Dow Family, 350 Wis. 2d 411, ¶¶15, 24 (relying on ch. 403 to define the right to enforce a note: "if an instrument is endorsed in blank, it becomes payable to the bearer and may be negotiated by transfer of possession

17

alone. . . . Without the original note, or a properly authenticated copy, there is no showing that [mortgage corporation] is entitled to enforce the note as the party in possession of a note endorsed in blank." (citing Mitchell Bank, 676 N.W.2d at 849)); Rodger v. Bliss, 130 Misc. 168, 169 (N.Y. Sup. Ct. 1927) ("The notes were presented by the plaintiff in open court . . . . They were negotiable instruments and their possession was prima facie evidence of ownership." (citations omitted)); Schmoldt v. Chi. Stone Setting Co., 33 N.E.2d 182, 183 (Ill. App. Ct. 1941) ("The production of the note by plaintiff was prima facie evidence of his ownership"); In re Foreclosure of a Deed of Trust Executed by Rawls, 777 S.E.2d 796, 799-800 (N.C. Ct. App. 2015) ("[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it." (quoting Horvath v. Bank of New York, N.A., 641 F.3d 617, 621 (4th Cir. 2011) (alteration in original))). However, the 2008 financial crisis precipitated inconsistent judicial application of a previously longstanding rule.[13] Renuart, supra ¶20, at 1241 ("The connection between the

---

[13] Wisconsin has not been immune to this dissonance and the court of appeals has issued numerous discordant opinions in the years following the financial crisis addressing the precise issue before this court. See, e.g., Bank of New York Mellon v. Harrop, No. 2014AP2200, unpublished slip op., ¶¶ 8, 15 (Wis. Ct. App. Mar. 31, 2016) (per curiam) (contradicting its holding in
(continued)

18

right to foreclose and the U.C.C. is one of the most common issues faced by courts over the last five years due primarily to the mishandling of the notes and mortgages and the foreclosing party's response to the lack of proper documentation."). In 2011, the Permanent Editorial Board for the Uniform Commercial Code issued a report addressing "[r]ecent economic developments

---

the instant case when it ruled the Bank could enforce the note against Harrop based on presentment of "the original Note" with the debtor's signature "in original pen ink" and admission of a copy into evidence; the court of appeals upheld the circuit court's finding that "the fact that . . . counsel is representing the [Bank] in this case, has the note physically in his possession, is enough to establish that the note is in possession of the [Bank]."); Bank of Am., N.A. v. Minkov, No. 2012AP2643, unpublished slip op., ¶18 (Wis. Ct. App. Aug. 8, 2013) ("Under this principle, because the note is endorsed in blank, Bank of America is entitled to enforce the note if indeed it possesses the note. However, as discussed above, Bank of America has failed to identify any evidence in the record that it possesses the original note. Therefore, it has not made a prima facie showing that it is entitled to summary judgment." (Emphasis added.)); PHH Mortg. Corp. v. Kolodziej, No. 2010AP60, unpublished slip op., ¶28 (Wis. Ct. App. Mar. 10, 2011) ("Because PHH's submissions do not provide authentication for the mortgage assignment and for the endorsed note, its submissions do not make a prima facie showing that it is the holder of the mortgage and note.").

The Wisconsin appellate court system functions fairly and efficiently only if the court of appeals fulfills its responsibility to publish opinions according to Wis. Stat. § (Rule) 809.23(1). The court of appeals, in particular district IV with respect to the very issue presented here, has been issuing unpublished opinions, per curiam opinions, or summary disposition decisions even when the issue satisfies the criteria for publication. This not only deprives the bench and bar of important guidance on legal issues of substantial and continuing public interest, it risks inconsistent disposition of cases across Wisconsin.

19

[that] have brought to the forefront complex legal issues about the enforcement and collection of mortgage debt."[14] Specifically, the board addressed the situation where "the party to whom a note is payable may be changed by indorsement." The board offered the following illustration mirroring the instant case:

> Maker issued a negotiable mortgage note payable to the order of Payee. Payee indorsed the note in blank and gave possession of it to Transferee. Transferee is the holder of the note and, therefore, is the person entitled to enforce it. UCC §§ 1-201(b)(21)(A), 3-301(i).[[15]]

¶27 As applied here, Wuensch was the maker and issued the original Note to the order of HLB Mortgage, the payee. HLB Mortgage subsequently endorsed the Note to AHM, also the payee, which then endorsed the Note in blank. At this point, the Note became enforceable upon transfer by the party in possession. See Dow Family, 350 Wis. 2d 411, ¶17 n.6. When Deutsche Bank took possession of the Note before trial, it mirrored the position of the illustration's transferee. Thus, physical possession of the original Note, endorsed in blank, by Deutsche

---

[14] Permanent Editorial Board for the Uniform Commercial Code, Report: Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes 1 (2011).

[15] This report largely reflects in form and function the official comments to the U.C.C. While this report and its illustrations are not law, we find them to be persuasive authority. See, e.g., Paulson v. Olson Implement Co., Inc., 107 Wis. 2d 510, 523-24, 319 N.W.2d 855 (1982); State v. Eugenio, 210 Wis. 2d 347, 352, 565 N.W.2d 798 (Ct. App. 1997), aff'd, 219 Wis. 2d 391, 579 N.W.2d 642 (1998).

Bank's attorney at trial was sufficient evidence to support the circuit court's conclusion that Deutsche Bank was the holder of the Note, enabling the Bank to enforce it. Rawls, 777 S.E.2d at 800.

¶28 Second, possession of the original Note by Deutsche Bank's trial counsel in his capacity as legal representative of the Bank does not impair the Bank's status as bearer. When trial counsel presented the orignal Note to the circuit court, he was not acting to enforce the Note himself of course, but on behalf of his client. Dawson Town & Gas Co. v. Woodhull, 67 F. 451, 452 (8th Cir. 1895) ("When the notes were offered, they were in the hands of the plaintiff's attorneys. The legal presumption was that they had received them from the hands of their client . . . ."); see also U.C.C. § 3-420 cmt. 1 (Am. Law Inst. & Unif. Law Comm'n 2013-14) ("Delivery to an agent [of the payee] is delivery to the payee.").[16] On this issue, we find particularly persuasive In re Hernandez, No. 13-04735-8-SWH, slip op., at 5 (Bankr. E.D.N.C. Dec. 24, 2014), in which a bankruptcy court in the Eastern District of North Carolina concluded that in presenting an original note during court proceedings in order to establish the client's possession thereof, an attorney acts as an agent for the holder:

> At the hearing . . . counsel for [petitioner] presented the original Note with a blank endorsement. While [petitioner's counsel] was in actual possession of the Note, he was acting as attorney, agent and

---

[16] See supra note 15.

21

> proxy for [petitioner] and it is clear from the court's examination of the Note that it was the original document clearly in the possession of [petitioner]. . . .

Because one underlying purpose of Wisconsin's U.C.C. is "[t]o make uniform the law among the various jurisdictions," Wis. Stat. § 401.103(1)(c), Wisconsin courts "give substantial weight to cases from other jurisdictions" when resolving issues that arise under that code. Borowski v. Firstar Bank Milwaukee, N.A., 217 Wis. 2d 565, 577, 579 N.W.2d 247 (Ct. App. 1998).

¶29 The court of appeals erred in concluding that Deutsche Bank was required to prove "the document in the plaintiff's counsel's hands in fact came from his client and not from some other person or entity." Deutsche Bank, No. 2015AP175, at 7. The U.C.C. requires nothing more than presentment of the original wet-ink note endorsed in blank in order to enforce it, and presentment to the circuit court at trial may be accomplished through the holder's attorney without the need for testimony regarding how the holder came to possess the note.

¶30 Further, trial counsel did not issue "unsworn statements" when he presented the original Note and the copy to the circuit court for inspection. An attorney presenting self-authenticating evidence to the trier of fact on behalf of his client is not acting in the same capacity as a witness

delivering testimonial evidence.[17]  Thus, the court of appeals' holding that "[t]he plaintiff was obligated to prove, under the rules of evidence, that the document in the plaintiff's counsel's hands in fact came from his client and not from some other person or entity" is patently wrong.  Id. (emphasis added).  Such testimony is entirely unnecessary where, as here, no extrinsic evidence was needed to admit the Note, Wis. Stat. § 909.02(9), and no testimony was needed to explain the circumstances of Deutsche Bank's possession; rather, the Bank had the right to enforce the Note endorsed in blank solely by virtue of its possession of the original Note.  Trial counsel was merely acting in the ordinary course of his representation of Deutsche Bank when he offered the original Note to the circuit court for inspection and the copy of the Note for admission into evidence.

---

[17] We can find no Wisconsin law directly stating this point, which comes as no surprise because "[t]he proposition is so apparent on its face that it is difficult to find legal citation to support it." State v. Groppi, 41 Wis. 2d 312, 323, 164 N.W.2d 266 (1969), vacated on other grounds, 400 U.S. 505 (1971).  "Lawyers routinely make assertions of procedural and process facts and provide background information to judges . . . .  Lawyers do not need to be sworn when asserting these process and background facts because they have an ethical obligation not to make false statements of fact or law to the judge."  Judith A. McMorrow, The Advocate as Witness: Understanding Context, Culture and Client, 70 Fordham L. Rev. 945, 946 (2001) (footnotes omitted); see also SCR 20:3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct false statement of material fact or law previously made to the tribunal by the lawyer.").

¶31 Finally, the nature of the original Note as self-authenticating commercial paper under Wis. Stat. § 909.02(9) is entirely independent of the issue of possession. Despite the fact that § 909.02(9) definitively answers the question, Wuensch argues that a trier of fact would need to determine the authenticity of the Note. However, "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by chs. 401 to 411." Wis. Stat. § 909.02(9). Among its findings of fact, the circuit court was "satisfied that the Plaintiff has in its possession the original ink Note. The Plaintiff produced the original ink Note at trial and the Court examined it. The Court is satisfied that it is the original Note. . . ." The circuit court was the trier of fact in this case, its personal examination is supported by Wis. Stat. § 909.015(3), and its findings are not clearly erroneous.

¶32 Wuensch suggests that admission of the copy into evidence itself is problematic. He urges us to consider Dow Family, 350 Wis. 2d 411, but ultimately misconstrues its holding. In Dow Family, the court of appeals held that a copy of an original note is insufficient evidence of possession and was inadmissible in absence of the original wet-ink note. Id., ¶20. The court of appeals held that Wis. Stat. § 909.01 requires "a document [to] be authenticated in order to be admissible." Id. Accordingly, the court of appeals considered the copy of the note alone insufficient to support

authentication and admission into evidence. Id., ¶21-22. Although under Wis. Stat. § 909.02(9) "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by chs. 401 to 411," in Dow Family, the plaintiff was unable to "explain the extent to which a copy of a note is self authenticating . . . ." 350 Wis. 2d 411, ¶22 (emphasis added). Most relevantly, the court of appeals reasoned that because "the original note's whereabouts were unknown to [the plaintiff]," this, along with other evidence, suggested that Fannie Mae, rather than the plaintiff, was actually in possession of the original note. Id., ¶23.

¶33 The facts in the instant case are distinguishable. Whereas in Dow Family the original note was unavailable for court inspection, Deutsche Bank's trial counsel actually presented the original Note for inspection and comparison against the copy. After examining the copy and the original side-by-side, the circuit court found the Note presented by Deutsche Bank's trial counsel to be the original Note and accordingly admitted a copy into evidence. In finding that the Note was what Deutsche Bank's trial counsel purported it to be, a "non-hearsay instrument . . . offered for its legal

25

significance, not to prove the truth of the matter asserted," the circuit court properly admitted the copy into evidence.[18]

## IV. CONCLUSION

¶34 We reject the court of appeals' legal conclusions because they disregard the plain meaning of the applicable U.C.C. provisions and impose evidentiary hurdles with no legal foundation. Affirming longstanding principles governing negotiable instruments, we hold that presentment to the trier of fact in a mortgage foreclosure proceeding of the original, wet-ink note endorsed in blank, establishes the holder's possession and entitles the holder to enforce the note. We reverse the summary disposition order of the court of appeals and uphold the circuit court's judgment of foreclosure in favor of Deutsche Bank.

---

[18] Because we uphold the judgment of the circuit court in concluding Deutsche Bank may enforce the Note against Wuensch, we need not reach Deutsche Bank's secondary argument that we should remand this case for Deutsche Bank to present additional testimony regarding its possession of the original Note.

This conclusion is also dispositive of Wuensch's secondary argument that the circuit court erroneously exercised its discretion when it allowed Deutsche Bank an equitable remedy despite its predecessor-in-interests' "unclean hands." While the primary issue is dispositive, we note that the circuit court considered AHM's actions in fashioning its remedy for Deutsche Bank while also considering that Wuensch was (and remains) in default as of February 2008. Because we uphold the circuit court's judgment of foreclosure in favor of Deutsche Bank, which factored Wuensch's claim of unclean hands into its equitable remedy for Deutsch Bank, we need not consider Wuensch's arguments regarding unclean hands further.

*By the Court.*—The decision of the court of appeals is reversed.

¶35 ANN WALSH BRADLEY, J. *(dissenting).* I agree with the court of appeals that "the rules of evidence may not be sidestepped based on the common sense expectation that the particular entity seeking to enforce a note is generally going to be the entity legally entitled to enforce the note." Deutsche Bank Nat'l. Tr. Co. v. Wuensch, No. 2015AP175, unpublished order at 7 (Wis. Ct. App. Aug. 23, 2016).

¶36 The precepts that govern the admissibility of evidence at trial do not rest merely on a particular person's idea of common sense. Rather they rest on the rule of law. The rules of evidence have been hued over centuries so "that the truth may be ascertained and proceedings justly determined." Wis. Stat. § 901.02. Indeed, the rules of evidence stand as both a safeguard and cornerstone for the fair administration of justice.

¶37 The presentation of admissible evidence is carefully circumscribed. There are only four pathways for the introduction of admissible evidence. See Wis JI──Civil 50 (2014). Given that "possession" is the essential question here, even a cursory review of the record reveals that no evidence was presented bearing on that issue:

- Evidence is the sworn testimony of witnesses──no sworn testimony on possession was presented.
- Evidence is deposition testimony presented at trial── no deposition testimony on possession was presented.
- Evidence is exhibits admitted by the court──no exhibits addressing possession were admitted.

1

- Evidence is agreements, stipulations, or facts the court directs the jury to find——there are no agreements or stipulations that Deutsche Bank holds the Note and its possession is not subject to judicial notice.[1]

¶38 Disregarding the evidentiary rules, the majority allows an attorney to introduce dispositive facts through unsworn statements and without calling a witness. Because I determine that Deutsche Bank's end run around the evidentiary rules is impermissible, I respectfully dissent.

I

¶39 The majority initially states that "[t]he issue before this court is whether presentment by a party's attorney of an original, wet-ink note endorsed in blank is admissible evidence and enforceable against the borrower without further proof that the holder had possession at the time the foreclosure action was filed." Majority op., ¶2 (emphasis added). Yet, it is unclear what the majority considers the issue to be. Without even attempting to answer the question as initially presented, it jettisons this question and focuses instead on possession at the time of trial. Which is it?

_____

[1] A court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" in that it is "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Wis. Stat. § 902.01(2). Deutsche Bank's possession of the Note is not subject to judicial notice. Not only is it subject to reasonable dispute, but it is in fact vigorously disputed.

2

¶40 If the question we are answering is based on possession at the time of filing, then Deutsche Bank must surely lose. Not only did Deutsche Bank fail to provide admissible evidence of its possession of the Note at the time of trial, it also certainly failed to present any information whatsoever to indicate that it possessed the Note at the time this action was filed. In other words, it failed to establish that it had standing to maintain the action in the first instance.[2] On this additional basis alone, Deutsche Bank may have failed to demonstrate its entitlement to enforce the Note.

¶41 Ultimately, the majority determines that "presentment to the trier of fact in a mortgage foreclosure proceeding of the original, wet-ink note endorsed in blank, establishes the holder's possession and entitles the holder to enforce the note." Id. In its view, Wis. Stat. § 403.301[3] is satisfied

---

[2] Courts around the country have concluded that a party attempting to enforce a note must have possessed the note not only at the time of trial, but also at the time of filing in order to establish standing. See, e.g., Country Place Community Ass'n, Inc. v. J.P. Morgan Mortg. Acquisition Corp., 51 So. 3d 1176, 1179 (Fla. Dist. Ct. App. 2010); Deutsche Bank Nat'l. Tr. Co. v. Haller, 100 A.D.3d 680, 682 (N.Y. App. Div. 2012); U.S. Bank, Nat'l. Ass'n v. Moore, 278 P.3d 596, ¶13 (Okla. 2012).

[3] Wisconsin Stat. § 403.301 provides:

"Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument under s. 403.309 or 403.418(4). A person may be a person entitled to enforce the instrument even though the

(continued)

because "Deutsche Bank's counsel physically possessed the original Note on his client's behalf at trial . . . ." Id., ¶24.

II

¶42 In order to maintain a foreclosure action, Deutsche Bank must demonstrate its entitlement to enforce the Note and Mortgage. The Note in this case is endorsed in blank and is therefore enforceable by the bearer. See Wis. Stat. § 403.205(2). Accordingly, Deutsche Bank must prove, by admissible evidence, that it is the bearer of the Note.

¶43 Neither the majority's approach nor its conclusion is framed by the rules of evidence. Relying on Wis. Stat. § 403.301 only, the majority sidesteps normal and accepted evidentiary procedure.

¶44 Possession, like any other evidentiary fact, is typically presented through the sworn testimony of a witness with knowledge of such possession. See Wis. Stat. §§ 909.01, 909.015(1). This remains as true in the foreclosure context as it is in all others.

¶45 Despite this well known and established procedure, the Note here was merely presented to the court by Deutsche Bank's counsel. The transcript reveals the following exchange between Deutsche Bank's counsel, Mr. Karnes, and Wuensch's counsel, Mr. Peterson:

---

person is not the owner of the instrument or is in wrongful possession of the instrument.

4

MR. KARNES: Your Honor, I'm handing Mr. Peterson a copy of the original [N]ote. I also have the original here today. I'm going to allow him to inspect the original document and compare it to the copy.

MR. PETERSON: Your Honor, I have inspected two different documents. One appears to be a copy of another document. Whether this is an original [N]ote, I have no idea nor could I conclude that, I'm not a witness.

¶46 The circuit court examined the documents and stated, "When I looked at the document purporting to be an original, looks like original ink on signatures and appears to be the same as what has now been marked as a copy Exhibit 1 . . . ." It subsequently found:

> The Plaintiff is the holder of the original Note, endorsed in blank. The Court is satisfied that the Plaintiff has in its possession the original ink Note. The Plaintiff produced the original ink Note at trial and the Court examined it. The Court is satisfied that it is the original Note executed by Wuensch on December 18, 2006. Exhibit 1 is a true and accurate copy of the original ink Note.

¶47 In comparing the circuit court's subsequent findings of fact to the actual exchange in court[4] underlying the circuit court's findings, a critical inaccuracy in the findings of fact is illuminated. As cited above, Deutsche Bank's counsel, and not any employee of Deutsche Bank, presented the purported Note to the court ("I also have the original here today. I'm going to allow him to inspect the original document and compare it to

---

[4] I use the term "exchange in court" here rather than "testimony" because counsel for Deutsche Bank was not testifying as a witness when introducing the Note, and the circuit court's finding that Deutsche Bank possessed the Note was not based on any actual testimony.

the copy.") (emphasis added).  The attorney did not actually address Deutsche Bank's possession of the Note.

¶48 Nevertheless, the majority accepts Deutsche Bank's invitation to simply infer that because Deutsche Bank's counsel had the Note in his possession, he must have received it from Deutsche Bank.  Yet no witness testified to this and no evidence was presented at trial that would support this inference.[5]

¶49 The circuit court took no sworn testimony on the issue of possession.  The Note was put before the circuit court only through the unsworn remarks of Deutsche Bank's attorney.  This is problematic for several reasons.  First, remarks of counsel are not evidence.  Kenwood Equip., Inc. v. Aetna Ins. Co., 48 Wis. 2d 472, 481, 180 N.W.2d 750 (1970); Wis JI——Civil 50, at 5, 110 (2017).  Indeed, Deutsche Bank's attorney could not have acted as a witness without potentially violating his professional ethical obligations.  See SCR 20:3.7(a).[6]

---

[5] There was likewise no statement made regarding where counsel obtained the Note.  I agree with the majority that such testimony is unnecessary:  "[b]ecause of the nature of a note endorsed in blank, precisely how Deutsche Bank came into physical possession of the Note is not relevant." Majority op., ¶8.  Thus, testimony on the topic of possession need not be extensive.  A hypothetical witness need only provide testimony that the original note is in Deutsche Bank's possession, not testimony regarding how Deutsche Bank came to possess it.

[6] SCR 20:3.7(a) provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(continued)

¶50 Second, the attorney's statements were unsworn. It is well understood that "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the witness's duty to do so." Wis. Stat. § 906.03. Unsworn statements are "not evidence" and have "no proper place in [a] trial." Nelson v. State, 35 Wis. 2d 797, 812, 151 N.W.2d 694 (1967).

¶51 Finally, Deutsche Bank's attorney gave no indication he had personal knowledge of Deutsche Bank's possession of the Note. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Wis. Stat. § 906.02. When proffering the Note to the circuit court, counsel did not use the word "possession" and did not make any statement akin to a claim that Deutsche Bank possessed the Note. In sum, no evidence was presented that Deutsche Bank possessed the Note.

¶52 The majority attempts to escape the conclusion that the circuit court erred with the assertion that "[a]n attorney presenting self-authenticating evidence to the trier of fact on

---

> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Sub. (1) does not apply here because the issue of possession was contested, and neither sub. (2) nor (3) applies on its face.

7

behalf of his client is not acting in the same capacity as a witness delivering testimonial evidence." Majority op., ¶30. Then in what capacity was he acting? He was attempting to introduce evidence. If he was acting as counsel, then his remarks are not evidence. See Kenwood Equip., 48 Wis. 2d at 481. If he was acting as a witness, then he impermissibly provided unsworn testimony. See Wis. Stat. § 906.03.

¶53 The comments to SCR 20:3.7 emphasize the distinction between testimony and advocacy: "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on the evidence given by others." Here, the attorney attempted to straddle this line, but ultimately was unsuccessful on both fronts. He did not testify to any personal knowledge of possession, and there was no evidence offered on the topic about which he could comment.

¶54 By accepting Deutsche Bank's attorney's presentation of the Note, the circuit court created in essence an unrebuttable presumption that Deutsche Bank possessed it. After the circuit court accepted the Note as the original and in the possession of Deutsche Bank, what was the homeowner to do? He could not cross examine the attorney, who was not under oath and not called as a witness.

¶55 Based on the actual evidence presented, I conclude that the circuit court's finding of fact that Deutsche Bank possessed the Note was clearly erroneous. There was no evidence to that effect presented and therefore Deutsche Bank failed to prove it possessed the Note.

8

III

¶56 The court of appeals recognized that its "mandate reversing the judgment of foreclosure in this action may appear at first blush to elevate form over substance and to produce a highly inefficient result." Deutsche Bank Nat'l. Tr. Co. v. Wuensch, No. 2015AP175, unpublished order at 8 (Wis. Ct. App. Aug. 23, 2016). Contrarily, the majority opinion is certainly efficient.

¶57 Although efficiencies are admittedly important, adherence to the evidentiary rules should drive foreclosure proceedings. Courts should ensure that a lender has everything in order before issuing a foreclosure judgment. The rules exist to ensure that "proceedings [are] justly determined." Wis. Stat. § 901.02. The corner cutting endorsed by the majority eschews the evidentiary rules and subverts that goal.

¶58 For the reasons set forth, I respectfully dissent.

¶59 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

1