COURT OF APPEALS
DECISION
DATED AND FILED

August 18, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1375**

Cir. Ct. No.  **2017CV117**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

U.S. BANK NATIONAL ASSOCIATION , AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC3,

   PLAINTIFF-RESPONDENT,

  V.

JEFFREY B. VAN GOETHEM AND SHERILYN VAN GOETHEM,

   DEFENDANTS-APPELLANTS,

BARBARA R. HAMARA, STEPHEN G. HAMARA, BAYFIELD FINANCIAL, LLC, CAPITAL ONE BANK (USA) N.A., MIDLAND FUNDING LLC, AND PORTFOLIO RECOVERY ASSOCIATES LLC,

   DEFENDANTS.

---

APPEAL from a judgment of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge.  *Affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Jeffrey and Sherilyn Van Goethem[1] appeal a foreclosure judgment granted on U.S. Bank National Association's (U.S. Bank) summary judgment motion. The Van Goethems argue that, for a number of reasons, the circuit court erred by granting U.S. Bank a judgment in the amount of $289,437.75. The Van Goethems also argue the court erred by including in its judgment an order correcting a scrivener's error in the mortgaged premises' legal description.

¶2     We reject the Van Goethems' arguments regarding the circuit court's grant of the foreclosure judgment in the amount of $289,437.75, with one exception. Specifically, we agree with the Van Goethems that the court erred by including in the judgment an award of $3357.50 for a "prior servicer fee." As to the court's correction of the scrivener's error in the mortgaged premises' legal description, we conclude the court's action was authorized by WIS. STAT. § 847.07 (2017-18).[2] We therefore affirm the foreclosure judgment in part, reverse in part, and remand for the circuit court to enter judgment consistent with this opinion.

---

[1] In this opinion we refer to Jeffrey and Sherilyn collectively as the Van Goethems and individually by their first names.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

**BACKGROUND**

¶3    In 2006, Jeffrey entered into a note promising to pay FMF Capital LLC the principal sum of $99,000, plus interest, in exchange for a loan.[3]  The note was secured by a mortgage on Jeffrey and Sherilyn's homestead property located at 9623 County Road D in Hazelhurst, Wisconsin (the Property).[4]  In April 2006, the mortgage was recorded in Oneida County.

¶4    The Van Goethems' first mortgage payment was due on June 1, 2006.  Subsequent payments were due on the first day of each month thereafter for a period of thirty years.  Late charges accrued on the fifteenth day of each month, and the Van Goethems' failure to pay "each monthly payment" constituted a default.

¶5    The mortgage required the Van Goethems to "pay all taxes, assessments, charges, fines, and impositions attributable to the Property."  The mortgage further provided that if the Van Goethems failed to make these payments, the lender could "exercise its rights" to directly make the payments and then demand repayment from the Van Goethems.

¶6    Similarly, the mortgage required the Van Goethems to purchase insurance on the Property and provided that if they failed to do so, the lender could

---

[3]  We observe that it is undisputed on appeal that this note was endorsed in blank and that U.S. Bank is the current holder of the original note.  U.S. Bank therefore has the right to enforce the note.  *See* ***Deutsche Bank Nat'l Tr. Co. v. Wuensch***, 2018 WI 35, ¶24, 380 Wis. 2d 727, 911 N.W.2d 1.

[4]  Although Sherilyn did not sign the note, she did sign the mortgage.

obtain insurance at the Van Goethems' expense. In addition, the mortgage provided that the lender could charge the Van Goethems:

> fees for services performed in connection with [the Van Goethems'] default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to [the Van Goethems] shall not be construed as a prohibition on the charging of such fee.

¶7 The mortgage also stated that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Although the mortgage informed the Van Goethems that such a "sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note," the mortgage did not mention any potential fees associated with a sale of the Note or mortgage.

¶8 The Van Goethems undisputedly made their last mortgage payment in August 2008. In 2017, U.S. Bank initiated this action alleging the Van Goethems were in default under the terms of the note and mortgage and seeking to foreclose on the Property. In addition, U.S. Bank requested that the circuit court reform the mortgage to correct a "mutual mistake" contained in the mortgage's legal description of the Property.

¶9 Regarding the alleged "mutual mistake," the complaint asserted that the mortgage's legal description of the Property referred to one of its boundaries as being at the "chord of 62º 17' 41" W." The correct boundary, according to the

complaint, was at the "chord of <u>N.</u> 62º 17' 41" W." (Emphasis added.) In support of that assertion, attached to the complaint was a copy of a quitclaim deed, recorded in 2001, which transferred the Property from Jeffrey alone to Jeffrey and Sherilyn as husband and wife. That quitclaim deed included the missing letter "N." in the Property's legal description.

¶10 In their answer, the Van Goethems moved to dismiss U.S. Bank's claims on statute of limitations grounds. They also asserted that a mortgage could not be reformed in a foreclosure action, but that such reformation "must be done in a prior lawsuit under a [WIS. STAT.] Chapter 841 Declaration in Interest in Real Property lawsuit and/or related law."

¶11 The circuit court denied the Van Goethems' motion to dismiss.[5] Subsequently, U.S. Bank moved for summary judgment. In support of its motion, U.S. Bank filed an affidavit from Timeka Motlow, a "contract management coordinator" for U.S. Bank's loan servicer, Ocwen Loan Servicing, LLC (Ocwen).

¶12 As pertinent to this appeal, Motlow averred that the amount "due and owing upon [the Van Goethems'] note and mortgage" was $274,011.18. Motlow based her calculation on her review of the "business records relating to the servicing of the [Van Goethems'] mortgage loan."

¶13 U.S. Bank also submitted an affidavit from Benjamin Verdooren, a "senior loan analyst" for Ocwen's parent company. Verdooren's affidavit described the process that Ocwen undertakes "[w]hen servicing of a mortgage loan

---

[5] The circuit court's denial of the Van Goethems' motion to dismiss is not at issue in this appeal. We will not further discuss it.

5

is transferred from a prior servicer to Ocwen." Verdooren described this process—referred to as "onboarding"—as follows:

> The first step in the onboarding process for a borrower's loan is preboarding, when the borrower's name and information concerning his or her loan are transferred from the prior servicer to Ocwen's computer system. The next step is the actual boarding process, when data concerning the loan's current status including servicing history and other computerized records concerning the loan are transferred electronically from the prior servicer to Ocwen. During this step, data concerning the borrower's loan servicing is checked for errors via a computerized process. The final step in the onboarding process is the correspondence from the prior servicer informing the borrower of the transfer of servicing to Ocwen (the "goodbye" letter), and the correspondence from Ocwen to the borrower informing that it will be servicing the loan (the "hello" letter).
>
> … As part of this computerized onboarding process, the borrower's computerized records concerning his or her loan are transferred to Ocwen's system, and those records become part of Ocwen's computerized servicing records for the borrower's loan. In the onboarding process, the records of the prior servicer regarding a loan are verified for accuracy at the time they are integrated into Ocwen's system. Accordingly, Ocwen relies upon and adopts the records of the prior servicer as accurately setting forth the records concerning the borrower's loan.

Verdooren also averred that he had reviewed the Motlow affidavit and "confirmed" that the amounts set forth in that affidavit as due and owing on the Van Goethems' note and mortgage were "true and correct based upon my personal review of the computerized records of Ocwen."

¶14 The Van Goethems did not file any affidavits in opposition to U.S. Bank's motion for summary judgment. Instead, they argued that U.S. Bank's "submissions (which include other's records) do not undisputedly prove with

6

admissible evidence all material facts and amounts owed to gain Summary Judgment."

¶15    Following a hearing, the circuit court granted U.S. Bank's summary judgment motion, entered judgment in the amount of $289,437.75, and ordered Van Goethems' property to be sold at sheriff's sale.[6]  The court also ordered that "the legal description of the mortgaged premises" be "hereby changed" to include the omitted letter "N."  The Van Goethems now appeal.

## DISCUSSION

¶16    We review de novo the grant of summary judgment, employing the same methodology as the circuit court.  *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.  A party is entitled to summary judgment when there are no genuine issues of material fact and that party is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2).  We examine the moving party's submissions to determine whether they constitute a prima facie case for summary judgment.  *Palisades*, 324 Wis. 2d 180, ¶9.  If they do, then we examine the opposing party's submissions to determine whether there are material facts in dispute that entitle the opposing party to a trial.  *Id.*

---

[6] The parties do not squarely address the discrepancy between the amount listed as "due and owing" in the Motlow affidavit ($274,011.18) and the judgment amount ($289,437.75). Based upon our independent review of the record, it appears the difference is attributable to the following changes between the amounts individually listed in the Motlow affidavit and the amounts individually listed in the foreclosure judgment: (1) a $6226.59 increase in accrued interest; (2) a $3389.35 increase in "escrow balance"; (3) a $12.53 increase in "certified mail cost"; (4) a $571.40 deduction for an unspecified "credit"; and (5) the circuit court's award of $6369.50 for attorney fees to U.S. Bank, which award was not contemplated by the Motlow affidavit.  Because the parties' dispute about the propriety of the judgment amount focuses elsewhere, we do not further address this issue.

¶17    Affidavits in support of, and in opposition to, a motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence."  WIS. STAT. § 802.08(3). On summary judgment, the party submitting the affidavit need not submit sufficient evidence to conclusively demonstrate the admissibility of the evidence it relies on in the affidavit.  *Palisades*, 324 Wis. 2d 180, ¶10.  Instead, that party need only make a prima facie showing that the evidence would be admissible at trial.  *Id.*  If admissibility is challenged, the court must then determine whether the evidence would be admissible at trial.  *Id.*

¶18    Here, the Van Goethems' primary challenge to the circuit court's grant of U.S. Bank's summary judgment motion rests on their assertion that certain evidence contained in the affidavits U.S. Bank filed in support of its motion was not admissible.  They reason that Ocwen did not begin servicing the mortgage until 2012, and there were no affidavits submitted from any of the entities that serviced the loan prior to that date.  Based on the lack of affidavits from these prior servicers, the Van Goethems contend any data contained in the prior servicers' records was inadmissible under *Palisades* to support the balance U.S. Bank claimed was due on foreclosure.

¶19    U.S. Bank responds that *Deutsche Bank National Trust Co. v. Olson*, 2016 WI App 14, 366 Wis. 2d 720, 875 N.W.2d 649 (2015), not *Palisades*, governs the admissibility of the records in this case.[7]  For the reasons that follow, we agree with U.S. Bank.

---

[7] We note that U.S. Bank made the same argument below, and the circuit court agreed that the records were admissible under *Deutsche Bank National Trust Co. v. Olson*, 2016 WI App 14, 366 Wis. 2d 720, 875 N.W.2d 649 (2015).

¶20 In *Palisades*, a collections company seeking to recover a credit card debt moved for summary judgment against the account holder. *Palisades*, 324 Wis. 2d 180, ¶¶3-4. In support of its motion, the company filed an affidavit in which the company's employee averred that the account records attached to the affidavit were true and correct copies of the account holder's credit card statements. *Id.*, ¶4. We concluded that the affidavit was not sufficient to establish a prima facie case for summary judgment because the affiant was not qualified to testify as to the account records at issue. *Id.*, ¶1. We reasoned that the account records at issue were generated by a bank, not the collections company, and that they were therefore not admissible under the business records hearsay exception.[8] *Id.*

¶21 In *Olson*, an employee of Deutsche Bank's mortgage loan servicer—Select Portfolio Servicing (SPS)—testified at trial regarding the amount due and owing under a note issued to Olson. *Olson*, 366 Wis. 2d 720, ¶¶2-16. This testimony included the SPS employee's acknowledgment that her analysis of the loan history was based on her review of records generated by a prior loan servicer that were onboarded into SPS's records. *Id.*, ¶14.

¶22 On appeal, Olson argued that the evidence of the prior loan servicer's records was inadmissible under *Palisades*. *Olson*, 366 Wis. 2d 720, ¶23. We rejected that argument and concluded that "third-party records can fall within the business records exception where the party offering the records for admission into evidence establishes that the third-party's records are integrated into that party's business records and that that party relies upon those records."

---

[8] *See* WIS. STAT. § 908.03(6)

*Id.*, ¶37. In reaching our conclusion, we noted that "*Palisades* stands for the extremely narrow proposition that the hearsay exception for business records is not established when the only affiant concerning the records in question lacks personal knowledge of how the records were made." *Olson*, 366 Wis. 2d 720, ¶41 (citation omitted).

¶23 In the present case, U.S. Bank provided—via the Verdooren affidavit—an explanation, based upon Verdooren's personal knowledge, of the process Ocwen used when onboarding the records made by prior servicers of the Van Goethems' mortgage. In other words, as in *Olson*, "this simply is not a scenario in which a custodian from one entity testified to records created by another entity." *Id.*, ¶46.

¶24 In the Van Goethems' reply brief, they argue that *Olson* is materially distinguishable because it did not involve review of a summary judgment decision. This argument is unavailing. As explained above, if a party challenges the admissibility of evidence another party relies upon in support of its summary judgment submissions, then the circuit court must determine whether the evidence would be admissible at trial. *Palisades*, 324 Wis. 2d 180, ¶10.

¶25 Here, in response to the Van Goethems' challenge to the admissibility of the records relied upon in the Motlow affidavit, the circuit court properly determined that the records would be admissible under *Olson*. The court therefore properly determined that proceeding to trial simply to hear the evidence already before it was unnecessary. Indeed, "[t]he purpose of the summary judgment procedure is to avoid trials when there is nothing to try." *Tews v. NHI, LLC*, 2010 WI 137, ¶42, 330 Wis. 2d 389, 793 N.W.2d 860.

¶26    The Van Goethems also contend the circuit court erred in granting summary judgment because there were disputed issues of material fact concerning the "validity of all claimed charge[s] or fees in the offered loan history."  The Van Goethems' arguments in this regard are—with one exception—either misplaced or undeveloped.

¶27    To begin, we observe that the Van Goethems' challenge regarding the "validity of all claimed charges or fees" is not based on a claim that they made certain payments that were either not recorded or not credited by any loan servicers.  To the contrary, the Van Goethems acknowledge that they have not made any payments on their mortgage since August 2008.  Nor do the Van Goethems point to any evidence calling into question the amounts listed as due and owing on the note and mortgage in the Motlow affidavit.  The Van Goethems instead repeatedly insist it was not "undisputedly proven" that the amounts were, in fact, accurate.

¶28    The Van Goethems' "undisputedly proven" line of argument rests on a fundamental misunderstanding of the summary judgment procedure.  U.S. Bank submitted the Motlow and Verdooren affidavits in support of its summary judgment motion.  "[E]videntiary facts stated in the affidavits are to be taken as true if not contradicted by other opposing affidavits or proof."  *Leszczynski v. Surges*, 30 Wis. 2d 534, 539, 141 N.W.2d 261 (1966).  Thus, once the circuit court determined the evidentiary facts in the affidavits were supported by admissible evidence (i.e., the records of the prior loan servicers onboarded into Ocwen's records), the Van Goethems needed to submit evidentiary materials to create a genuine issue of material fact to avoid summary judgment.  Because they did not do so, the court properly accepted as "undisputedly proven" the evidentiary facts set forth in the supporting affidavits.

11

¶29    The Van Goethems also assert that the terms of the note and mortgage did not authorize U.S. Bank to collect property valuation, inspection, title search, and prior servicer fees.  With regard to the first two categories of fees, the record belies the Van Goethems' assertion.  The mortgage specifically authorizes a lender to charge the Van Goethems "property inspection and valuation fees."

¶30    As for title search fees, the note provides that the lender is entitled to collect its "costs and expenses in enforcing" the note.  U.S. Bank asserts in its response brief that "[t]itle search fees are typically incurred in preparation for a foreclosure action, to identify other encumbrances and liens on the property, for purposes of identifying parties for joinder."  Because the Van Goethems fail to offer any argument casting doubt on U.S. Bank's assertion, we deem it conceded that the title search fees listed in the Motlow affidavit were costs or expenses incurred in enforcing the note.  *See* ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (holding that a party's failure to refute an argument constitutes a concession).  The circuit court therefore properly awarded U.S. Bank those fees in its judgment.

¶31    We conclude, however, that neither the mortgage nor the note authorized U.S. Bank to collect the $3357.50 that the circuit court awarded for a "prior servicer fee."  We reach this conclusion for two reasons.  First, U.S. Bank fails to explain on appeal what a "prior servicer fee" entails and why such a fee is recoverable under the note and mortgage.[9]  This silence stands in contrast to

---

[9] Nor has our independent review of the record revealed the basis for the "prior servicer fee."

U.S. Bank's cogent explanation as to why a title search fee is properly considered a "cost and expense" reasonably incurred in enforcing the note.

¶32     Second, even though the mortgage explained to the Van Goethems that the note and mortgage could be sold without notice to different servicers, the mortgage made no mention of any fees associated with such sales.  Thus, on this record, we cannot conclude that U.S. Bank established a prima facie case that it was entitled to an award of $3357.50 for the prior servicer fee.

¶33     The Van Goethems also challenge the circuit court's award of attorney fees to U.S. Bank.  In doing so, they acknowledge that the note and mortgage allow for U.S. Bank to collect "reasonable" attorney fees, but they argue that the amount the court awarded "seems too high."  The only support the Van Goethems provide for this supposition is a citation to a chart showing the "maximum attorney's fees" allowed by the Federal National Mortgage Foundation (commonly known as Fannie Mae) for "routine foreclosure action[s]."  We decline to further consider this undeveloped argument.  *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶34     Finally, the Van Goethems argue the circuit court erred by ordering that the legal description in the mortgage be "hereby changed" to include the omitted letter "N."  In so arguing, they do not dispute that the omission of the letter "N." was a mere scrivener's error.  Rather, they argue that "[t]here is simply no controlling law that allows a recorded legal description to be changed" without evidence or an affidavit.  To that end, they argue that the only legal means by which the court could correct the legal description in the mortgage was pursuant to either: (1) a separate action filed under WIS. STAT. ch. 841; or (2) a sworn affidavit of correction being filed under WIS. STAT. § 706.085.

¶35 We reject the Van Goethems' argument for two reasons. First, there was evidence submitted by U.S. Bank in support of its argument that the mortgage inadvertently omitted the letter "N." Namely, U.S. Bank submitted a copy of a quitclaim deed—recorded prior to the mortgage at issue here—which transferred title to the Property and contained the missing "N." That deed constituted evidence that the mortgage inadvertently omitted the same.

¶36 Second, the Van Goethems' argument regarding the "controlling law" which allows a recorded legal description to be changed overlooks WIS. STAT. § 847.07. That statute provides:

> (1) The circuit court of any county in which a conveyance of real estate has been recorded may make an order correcting the description in the conveyance on proof being made to the satisfaction of the court that any of the following applies:
>
> (a) The conveyance contains an erroneous description, not intended by the parties to the conveyance.

The omission of a single letter via a mere scrivener's error fits well within the ambit of this statute. Because the court therefore had the authority to correct the legal description in the mortgage, it did not err in ordering the legal description to be "hereby changed" to include the omitted "N."

¶37 In all, and for the reasons set forth above, we reject the vast majority of the Van Goethems' arguments regarding the circuit court's grant of the summary judgment of foreclosure in favor of U.S. Bank. We agree with the Van Goethems, however, that the court erred by including an award of $3357.50 for a "prior servicer fee" in its judgment amount. Thus, we affirm the foreclosure judgment in part, reverse in part, and remand for the circuit court to enter judgment consistent with this opinion.

¶38	No WIS. STAT. RULE 809.25(1) costs are awarded to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published.	*See* WIS. STAT. RULE 809.23(1)(b)5.